# MDG EXHIBIT "3"



**ORDERED in the Southern District of Florida on August 7, 2020.**

**Scott M. Grossman, Judge**
**United States Bankruptcy Court**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:                                              Chapter 11

Seven Stars on the Hudson Corp.,          Case No. 19-17544-SMG

     Debtor.
_____/

### ORDER DISMISSING SUBCHAPTER V CASE

New Subchapter V of Chapter 11 of the Bankruptcy Code – which establishes an expedited process for small business debtors to reorganize quickly, inexpensively, and efficiently – requires the debtor to file a plan within 90 days of the order for relief.[1] This deadline may be extended "if the need for the extension is attributable to circumstances for which the debtor should not be justly held accountable."[2] But what

---

[1] 11 U.S.C. § 1189(b).

[2] *Id.*

happens when a debtor first elects to proceed under Subchapter V after this deadline has already passed? That is the difficult question the Court must address in this case.

## I.    BACKGROUND.

Seven Stars on the Hudson Corp. ("Seven Stars") operates a trampoline park located in a larger indoor entertainment facility called Xtreme Action Park, in Broward County, Florida. Seven Stars leases its premises at Xtreme Action Park from MDG Powerline Holdings, LLC ("MDG"). An alleged affiliate of MDG – XBK Management, LLC d/b/a Xtreme Action Park ("Xtreme") – is a co-tenant of the leased premises.[3]

### A.    Seven Stars Files a Chapter 11 Petition as a "Small Business Debtor."

Seven Stars filed this Chapter 11 case on June 5, 2019, as a "small business debtor," as defined in the version of 11 U.S.C. § 101(51D) then in effect.[4] Shortly after filing the case, Seven Stars commenced an adversary proceeding against its co-tenant, Xtreme and its landlord, MDG.[5] Throughout the Chapter 11 case – which has been pending now for over one year – Seven Stars had to address disputes with its now-former franchisor, Rockin' Jump, LLC ("Rockin' Jump"); with its secured creditor, Wells Fargo Bank, N.A. ("Wells Fargo"); and with MDG and Xtreme.[6] Seven

---

[3] Although Seven Stars is a party to a lease agreement with MDG, the record in this case does not reveal any contractual relationship between Xtreme and Seven Stars. *See* ECF No. 28.

[4] ECF No. 1.

[5] *Seven Stars on the Hudson Corp. v. MDG Powerline Holdings, LLC and XBK Management, LLC*, Adv. No. 19-01230-SMG.

[6] ECF No. 186 at 1-2. Aside from Rockin' Jump, Wells Fargo, and MDG, Seven Stars has relatively little other debt, with only a few scheduled or filed general unsecured claims.

Stars has since concluded its relationship with Rockin' Jump under a settlement agreement approved by the Court.[7] With respect to Wells Fargo, Seven Stars has agreed on terms for consensual use of cash collateral,[8] and there are not any currently pending disputes of record between Seven Stars and Wells Fargo.

With respect to MDG and Xtreme, however, there remain unresolved disputes. One dispute that was resolved, however, was whether Seven Stars could assume its lease with MDG. Seven Stars timely moved to assume its lease on October 3, 2019.[9] The hearing to consider the assumption motion was consensually continued several times – apparently in deference to resolution first of Seven Stars' dispute with Rockin' Jump under its franchise agreement.[10] The last requested continuance of the lease assumption hearing was on March 3, 2020.[11] The Court granted that request the same day, and rescheduled the assumption hearing for April 29, 2020.[12]

B.    The Worldwide COVID-19 Pandemic Hits.

Shortly after granting the continuance, however, everything changed. On March 13, 2020, the President declared a national emergency due to the COVID-19 pandemic.[13] And on March 22, 2020, Broward County, Florida directed the closure of

---

[7] ECF Nos. 152, 161.

[8] ECF No. 118.

[9] ECF No. 80.

[10] *See, e.g.,* ECF No. 140.

[11] *Id.*

[12] ECF No. 143.

[13] *See, e.g., In re Pier 1 Imports, Inc.*, 615 B.R. 196, 198, n.2 (Bankr. E.D. Va. 2020*); In re Gateway Radiology Consultants, P.A.*, No. 8:19-BK-04971-MGW, 2020 WL 3048197, at *2 n.2 (Bankr. M.D. Fla. June 8, 2020).

"[a]ll nonessential retail and commercial business locations" due to the pandemic.[14]
Businesses in Broward County – including Seven Stars' trampoline park and Xtreme
Action Park – remained closed well into June 2020.[15]

Against the backdrop of the COVID-19 pandemic, Seven Stars and MDG
continued to litigate whether Seven Stars could assume its lease with MDG. MDG
argued that Seven Stars could not assume the lease because it terminated its
franchise agreement with Rockin' Jump, thereby violating the use clause of the lease,
and because Seven Stars was delinquent on post-petition rent that it had not paid for
April and May when it was prohibited by law from operating. After extensive briefing
and argument, on June 1, 2020, the Court granted Seven Stars' motion to assume,
ruling that termination of the Rockin' Jump franchise did not prohibit assumption,
and that failure to *timely* pay April and May rent, under the terms of the lease and
in light of the COVID-19 pandemic, likewise did not prohibit assumption.[16] Adopting
the rationale of *Pier 1 Imports*,[17] and in accordance with the requirements of
Bankruptcy Code section 365, the Court did, however, require that "[a]ny accrued but
unpaid post-petition rent payments shall be paid to MDG no later than the effective
date of any confirmed Chapter 11 [plan] as a Chapter 11 administrative expense

---

[14] Broward County Administrator's Emergency Order 20-01 (Mar. 22, 2020).

[15] *See* Broward County Administrator's Emergency Order 20-15, § 1(B) (June 5, 2020)
(permitting reopening of indoor amusement facilities subject to a 50% maximum capacity,
effective as of June 15, 2020).

[16] ECF No. 172.

[17] 615 B.R. at 202.

claim."[18] The result of the Court's ruling on the assumption motion is that Seven Stars must pay approximately $130,000 in unpaid post-petition rent to MDG on the effective date of a Chapter 11 plan.

    C.    <u>Seven Stars Files an Amended Chapter 11 Petition Electing to Proceed Under Newly-Enacted Subchapter V of Chapter 11.</u>

Due to an apparent inability to make that payment, on June 19, 2020 – over a year after its petition date, four months after the February 19, 2020 effective date of the Small Business Reorganization Act of 2019 (the "SBRA"),[19] and about three weeks after the Court ruled that it must pay MDG $130,000 on the effective date of a Chapter 11 plan – Seven Stars filed an *Amended Petition for Non-Individuals Filing for Bankruptcy*,[20] in which it elected to proceed under new Subchapter V of Chapter 11 of the Bankruptcy Code. Subchapter V, however, requires a debtor to file a plan not later than 90 days after the order for relief,[21] and requires the Court to hold a status conference not later than 60 days after the order for relief.[22] Here, the order for relief was entered on June 5, 2019.[23] Thus, upon amending its petition to elect to proceed under Subchapter V more than a year into its case, Seven Stars immediately put itself in default of the requirements of both Sections 1188(a) and 1189(b).

---

[18] ECF No. 172.

[19] Small Business Reorganization Act of 2019, Pub. L. No. 116-54, Aug. 23, 2019, 133 Stat. 1079, 1087 ("This Act and the amendments made by this Act shall take effect 180 days after the date of enactment of this Act.").

[20] ECF No. 178.

[21] 11 U.S.C. § 1189(b).

[22] 11 U.S.C. § 1188(a).

[23] The commencement of a voluntary case constitutes an order for relief. 11 U.S.C. § 301(b).

Further, Bankruptcy Code section 1112(b)(4)(J) provides that a debtor's failure to file a disclosure statement or to file or confirm a plan within the time fixed by the Bankruptcy Code constitutes cause for dismissal of this case.[24] Likewise, to confirm a Chapter 11 plan – even one under new Subchapter V – both the plan and the plan proponent must comply with the applicable provisions of the Bankruptcy Code.[25] Accordingly, because cause facially existed for dismissal of this case under Section 1112(b)(4)(J), on June 24, 2020, the Court issued an *Order to Show Cause Why Case Should Not Be Dismissed*[26] (the "Show Cause Order").

Both Seven Stars[27] and newly-appointed Subchapter V trustee, Linda Leali,[28] filed briefs opposing dismissal of the case, in which they argued that the Court had authority to allow Seven Stars to proceed under new Subchapter V, notwithstanding expiration of the statutory deadlines. MDG filed a brief in support of dismissal, in which it argued that Seven Stars could not use Subchapter V to subvert the Court's ruling on assumption of its lease,[29] and that extension of the expired statutory deadlines was not warranted.[30] MDG also argued that it had vested rights in this

---

[24] 11 U.S.C. § 1112(b)(4)(J).

[25] 11 U.S.C. §§ 1129(a)(1), (2); 1191(a).

[26] ECF No. 179.

[27] ECF No. 186. Due to rapidly-developing case law with respect to these new statutory provisions, Seven Stars also filed two supplements alerting the Court to new additional authority supporting its position. *See* ECF Nos. 187, 190.

[28] ECF No. 185.

[29] ECF No. 189.

[30] *Id.* at 3-4. While not specifically accusing Seven Stars of lacking good faith, MDG suggests that Seven Stars' election to proceed under Subchapter V is an improper request to reconsider or undo this Court's earlier ruling on assumption. Because Subchapter V is a new statute

case by virtue of this Court's earlier ruling on assumption of its lease, and that retroactive application of the Subchapter V deadlines would impermissibly alter those rights.[31] The Office of the United States Trustee did not file any brief supporting or opposing dismissal, and took no position on dismissal at the hearing on the Show Cause Order.

## II.    ANALYSIS.

### A.    Congress Creates New Subchapter V of Chapter 11 to Streamline the Reorganization Process for Small Businesses.

For a small business needing to reorganize its financial affairs, a Chapter 11 bankruptcy case can be prohibitively expensive. Recognizing that small business Chapter 11 cases "continue to encounter difficulty in successfully reorganizing," Congress enacting the SBRA to "streamline the bankruptcy process by which small businesses debtors reorganize and rehabilitate their financial affairs."[32] The SBRA created a new Subchapter V of Chapter 11 of the Bankruptcy Code that permits qualifying small business debtors "'to file bankruptcy in a timely, cost-effective manner, and hopefully allows them to remain in business' which 'not only benefits the owners, but employees, suppliers, customers, and others who rely on that business.'"[33]

---

with rapidly-developing caselaw – much of which facially supports Seven Stars' position – the Court does not find Seven Stars' attempt to proceed under Subchapter V as lacking good faith.

[31] *Id.* at 6-7.

[32] H.R. Rep. No. 116-171, at 1 (2019), *available at* https://www.congress.gov/congressional-report/116th-congress/house-report/171/1.

[33] *Id.* (quoting statement of Rep. Ben Cline (R-VA), the bill's sponsor, at a June 25, 2019 hearing held by the Subcommittee on Antitrust, Commercial, and Administrative Law).

Subchapter V by its very nature is intended to be an expedited process. It provides qualifying debtors with some powerful and cost-saving restructuring tools not otherwise available to Chapter 11 debtors. Among these benefits are:

(1) elimination of the absolute priority rule, which allows equity holders to retain their ownership interests without paying all creditors in full;[34]

(2) no mandatory appointment of a creditors committee;[35]

(3) no mandatory requirement to file a disclosure statement;[36]

(4) appointment of a Subchapter V trustee to assist in developing a consensual plan, while leaving the debtor in possession of its assets and in control of its business;[37]

(5) the exclusive right (which cannot be terminated) to file a plan;[38]

(6) the ability to modify a claim secured only by a security interest in the debtor's principal residence, if new value received in connection with granting the security interest was used primarily in connection with the debtor's business and not primarily to acquire the property;[39]

(7) the ability to confirm a plan even if all classes reject the plan;[40]

(8) the ability to pay administrative expenses over time under a plan;[41]

(9) modification of the disinterestedness requirements of Section 327(a) for a professional that holds a prepetition claim of less than $10,000;[42] and

---

[34] 11 U.S.C. §§ 1181(a), 1191(b).

[35] 11 U.S.C. § 1181(b).

[36] *Id.*

[37] 11 U.S.C. § 1183(b)(7).

[38] 11 U.S.C. § 1189(a).

[39] 11 U.S.C. § 1190(3).

[40] 11 U.S.C. § 1191(b).

[41] 11 U.S.C. § 1191(e).

[42] 11 U.S.C. § 1195.

(10) elimination of the requirement to pay quarterly U.S. Trustee fees;[43]

These extraordinary powers and cost-saving provisions granted to small business debtors are certainly laudable and are both helpful and necessary in making Chapter 11 more affordable for small businesses. But "[t]he overall purpose and function of the Bankruptcy Code is to strike a balance between creditor protection and debtor relief."[44] And to balance the special new powers available to small business debtors, Congress granted creditors a very important protection: the requirement that a Subchapter V case proceed expeditiously. In furtherance of that creditor protection, Subchapter V requires the court to conduct a status conference within 60 days of the order for relief;[45] requires the debtor to file a status report 14 days before that status conference;[46] and requires the debtor to file a plan within 90 days of the order for relief.[47] As with many other deadlines in the Bankruptcy Code, these deadlines can be extended. But, for a court to grant an extension, the court must find that the "need for the extension is attributable to circumstances for which the debtor should not justly be held accountable."[48]

B.    The SBRA is Silent About Its Application to Pending Cases.

The SBRA – which was enacted on August 23, 2019 – provides that "[t]his Act and the amendments made by this Act shall take effect 180 days after the date of

---

[43] 28 U.S.C. § 1930(a)(6)(A).

[44] *In re Travel 2000, Inc.*, 264 B.R. 444, 448 (Bankr. W.D. Mich. 2001).

[45] 11 U.S.C. § 1188(a).

[46] 11 U.S.C. § 1188(c).

[47] 11 U.S.C. § 1189(b).

[48] *Id.*; *see also* 11 U.S.C. § 1188(b).

9

enactment of this Act,"[49] but is silent as to whether it applies to pending cases or only to cases commenced after its February 19, 2020 effective date. Thus, almost immediately after taking effect,[50] courts across the country began wrestling with this issue,[51] along with related issues such as whether application of the SBRA to existing cases amounts to granting retroactive effect to the statute;[52] whether other parties' vested property rights are implicated by retroactive effect of the statute;[53] and

---

[49] *See* note 19, *supra*.

[50] The onset of the global COVID-19 pandemic – which started to spread widely throughout the United States about a month later – then created even more urgency to address how small businesses might use these new powerful tools available under Subchapter V to reorganize quickly, inexpensively, and efficiently. Indeed, shortly after the onset of the pandemic, Congress temporarily raised the Subchapter V debt limit from $2,725,625 to $7,500,000. Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, March 27, 2020, 134 Stat 281, 310-311 (the "CARES Act").

[51] *See, e.g., In re Ventura*, 615 B.R. 1 (Bankr. E.D.N.Y. 2020) (holding a debtor may amend her petition in a pending case to designate herself as a small business debtor and proceed under Subchapter V); *In re Progressive Solutions, Inc.*, 615 B.R. 894, 900-01 (Bankr. S.D. Cal. 2020) (finding no legal reason why a debtor with a pending Chapter 11 case could not amend its petition to proceed under new Subchapter V); *In re Twin Pines, LLC*, Case No. 19-10295-j11, 2020 Bankr. LEXIS 1217, *6 (Bankr. D. N.M. Apr. 30, 2020) (permitting debtor to elect Subchapter V status 387 days after petition date); *In re Moore Properties of Person County, LLC*, Case No. 20-80081, 2020 WL 995544, at *7 n.18 (Bankr. M.D. N.C. Feb. 28, 2020) (overruling objection to debtor's small business debtor designation made nine days after petition date, but observing that if "a debtor amends its election at a point in the case in which it creates cause to dismiss or convert the case under § 1112(b)(4)(J) or otherwise, a debtor's case will be in peril.").

[52] *See, e.g., Ventura*, 615 B.R. at 14-18; *Progressive Solutions*, 615 B.R. at 898-99; *In re Body Transit, Inc.*, 613 B.R. 400, 406-08 (Bankr. E.D. Pa. 2020); *In re Double H Transportation LLC*, 614 B.R. 553, 554 (Bankr. W.D. Tex. 2020); *Moore Properties*, 2020 WL 995544, at *2-5.

[53] *See, e.g., Ventura*, 615 B.R. at 15-18; *Progressive Solutions*, 615 B.R. at 899-900; *Body Transit*, 613 B.R. at 405-408; *Moore Properties*, 2020 WL 995544, at *2-5. While issues of retroactive application to pending cases and related due process implications are certainly important, they will, over time, be less important to SBRA jurisprudence as we get further away from the SBRA's effective date. But the issue addressed by the Court here – the effect of amending a petition to elect Subchapter V status after expiration of the Section 1188 and 1189 statutory deadlines – could arise in the future regardless of whether a case was filed before or after the SBRA effective date.

10

whether (and under what circumstances) a court may extend Subchapter V's statutory deadlines?[54] While these are all difficult questions of first impression with respect to this new statute, the Court finds the answer to the question before it in this case in the plain text of the Bankruptcy Code and Bankruptcy Rules.

      C.     Rule 1009 and Interim Rule 1020 Permit a Debtor to Elect Application of Subchapter V to an Already-Pending Case.

Interim Federal Rule of Bankruptcy Procedure 1020[55] provides that a debtor must "state in the petition whether the debtor is a small business debtor or a debtor as defined in § 1182(1) of the [Bankruptcy] Code[56] and, if the latter, whether the debtor elects to have Subchapter V of Chapter 11 apply."[57] Thus, under the Interim Rule, the means by which a debtor designates itself as a small business debtor and,

---

[54] *See, e.g., Ventura*, 615 B.R. at 13-14; *Twin Pines*, 2020 Bankr. LEXIS 1217, *6; *In re Trepetin*, Case No. 20-11718-MMH, 2020 WL 3833015, at *3-7 (Bankr. D. Md. July 7, 2020).

[55] Interim Rule 1020 was initially adopted in this District by Administrative Order 2020-02, dated February 18, 2020. After enactment of the CARES Act – which necessitated amendments to this interim rule – this Court adopted the current amended version of Interim Rule 1020 by Administrative Order 2020-08, dated April 21, 2020.

[56] Section 1182(1) was added to the Bankruptcy Code as part of the CARES Act, and provided a new definition of "debtor" (which temporarily raised the debt limit to $7,500,000) for purposes of determining eligibility to proceed under Subchapter V. *See* note 50, *supra*.

[57] Interim Fed. R. Bankr. P. 1020(a). Interim Rule 1020(a) then goes on to provide that "[t]he status of the case as a small business case or a case under Subchapter V of chapter 11 shall be in accordance with the debtor's statement under this subdivision, unless and until the court enters an order finding that the debtor's statement is incorrect." Interim Rule 1020(b) provides that "[t]he United States trustee or a party in interest may file an objection to the debtor's statement under subdivision (a) no later than 30 days after the conclusion of the meeting of creditors held under § 341(a) of the Code, or within 30 days after any amendment to the statement, whichever is later." Here, upon Seven Stars amending its petition to elect to proceed under Subchapter V, a new Section 341 meeting was scheduled for July 23, 2020. (ECF No. 183.) Thus, although the issue of whether Seven Stars' case should be dismissed is now properly before the Court, technically the United States Trustee or any party in interest would have had until August 24, 2020 to object to Seven Stars' statement in its amended petition that it elects to proceed under Subchapter V.

11

if so, whether it elects to proceed under Subchapter V, is by so stating in its petition.[58]

Here, when Seven Stars filed its petition on June 5, 2019, it did designate itself as a

small business debtor. But of course, Subchapter V had not yet been enacted, and so

Seven Stars could not have elected to proceed under Subchapter V at that time.

Federal Rule of Bankruptcy Procedure 1009, however, provides that "[a] voluntary

petition, list, schedule, or statement may be amended by the debtor as a matter of

course at any time before the case is closed."[59] Thus, nothing in the text of Rule 1009

or Interim Rule 1020 prevents a small business debtor from filing an amended

petition to elect to have Subchapter V apply to its case, even if it had not previously

elected to proceed under Subchapter V (or even if it filed its case before Subchapter

V became effective).[60]

---

[58] Because a debtor elects to proceed under Subchapter V by amending its petition – as opposed to converting its case from one chapter of the Bankruptcy Code to another chapter – such an election does not change the date of the order for relief. *See generally* 11 U.S.C. § 348; *see also Trepetin*, 2020 WL 3833015, at *3.

[59] Fed. R. Bankr. P. 1009.

[60] *See Ventura*, 615 B.R. at 13-15; *Progressive Solutions*, 615 B.R. at 900; *Body Transit*, 613 B.R. at 405-407; *Moore Properties*, 2020 WL 995544, at *7; *Twin Pines*, 2020 Bankr. LEXIS 1217, at *6; *Trepetin*, 2020 WL 3833015, at *2 (permitting debtor who originally filed a Chapter 7 case to convert to a Subchapter V Chapter 11 case); *In re Blanchard*, Case No. 12440, 2020 WL 4032411, at *3 (Bankr. E.D. La. July 16, 2020) (overruling U.S. Trustee's objection to debtors amending their petition to elect Subchapter V status after U.S. Trustee had filed a motion to convert their case to Chapter 7); *In re Bonert*, Case No. 2:19-bk-20836-ER, 2020 WL 3635869, at *2-3 (Bankr. C.D. Cal. June 3, 2020) (overruling objection of creditors committee to debtors amending their petition to elect to proceed under Subchapter V); *In re Bello*, 613 B.R. at 895-96 (Bankr. E.D. Mich. 2020) (permitting debtor who had originally filed a Chapter 13 case, then converted to Chapter 11, to subsequently amend his petition to elect to proceed under Subchapter V).

It may also very well be that MDG's vested rights in this case (in the form of the Court's earlier ruling on the terms on which Seven Stars could assume its lease) would render application of Subchapter V as offensive to "elementary considerations of fairness" here. *Moore Properties*, 2020 WL 995544, at *5 (quoting *Landgraf v. USI Film Products*, 511

D.    <u>What Consequences Flow from the Subchapter V Election</u>?

Having determined that nothing in the Federal Rules of Bankruptcy Procedure prohibited Seven Stars from amending its petition, the Court must now determine what consequences flow from that decision. As noted above, Section 1188(a) requires the Court to hold a status conference within 60 days after the order for relief, and Section 1189(b) requires the debtor to file a plan within 90 days after the order for relief. But, because Seven Stars elected to proceed under Subchapter V more than a year after its order for relief, Seven Stars immediately put itself in default of Sections 1188(a) and 1189(b) upon making that election.[61]

Seven Stars nevertheless argues – citing several recently-reported decisions – that the Court "has the necessary lawful power and authority to allow this case to proceed under new subchapter V."[62] Although Seven Stars did not affirmatively seek to extend the lapsed Section 1188(b) and 1189(b) deadlines, in opposing dismissal it relies on caselaw analyzing whether debtors can elect Subchapter V status after expiration of these deadlines (whether or not an extension was specifically sought).[63] To extend these deadlines, the Court must find that "the need for the extension is

---

U.S. 244, 265 (1994)). But, because – as discussed further below – the Court resolves this matter based on a plain reading of the statutes and rules, the Court need not address the questions of retroactivity and vested rights examined in *Ventura*, 615 B.R. at 15-18, *Progressive Solutions*, 615 B.R. at 899-900, and *Moore Properties*, 2020 WL 995544, at *2-5, which necessarily require application of more amorphous concepts of "elementary considerations of fairness."

[61] 11 U.S.C. §§ 1188(b), 1189(b).

[62] ECF No. 186 at 1.

[63] The newly-appointed Subchapter V trustee similarly argued that the Court can extend the Section 1188(b) and 1189(b) deadlines.

attributable to circumstances for which the debtor should not justly be held accountable."[64] Thus, to determine whether this case should be dismissed, the Court must determine whether Seven Stars should be granted an extension of the Section 1189(b) plan filing deadline (as well as the Section 1188 status conference deadline). If an extension is not warranted, then – as set forth in the Show Cause Order – cause exists for dismissal under Section 1112(b)(4)(J) because the debtor has failed to file a plan within the time fixed by the Bankruptcy Code. As further noted in the Show Cause Order, failure to meet these statutory deadlines would also render Seven Stars not in compliance with Sections 1129(a)(1) (a plan must comply with the applicable provisions of the Bankruptcy Code) and 1129(a)(2) (the plan proponent – here the debtor – must comply with the applicable provisions of the Bankruptcy Code),[65] and therefore unable to confirm a Chapter 11 plan.

E.    <u>Is the Need for an Extension Attributable to Circumstances for Which the Debtor Should Not Justly Be Held Accountable</u>?

While the phrase "if the need for an extension is attributable to circumstances for which the debtor should not justly be held accountable" is new to Chapter 11, that language is used elsewhere in the Bankruptcy Code. Specifically, Section 1221 of the Bankruptcy Code – which is found in Chapter 12 (applicable to cases for family farmers or family fisherman with regular annual income)[66] – uses the same language. Like Section 1189(b), Section 1221 requires a debtor to file a plan within 90 days after

---

[64] 11 U.S.C. § 1189(b); *see also* 11 U.S.C. § 1188(b), which contains virtually identical text, except it uses the word "an" before "extension" instead of "the."

[65] 11 U.S.C. §§ 1129(a)(1), (2); 1191(a).

[66] 11 U.S.C. § 109(f).

the order for relief, but provides that the court may extend this deadline "if the need for an extension is attributable to circumstances for which the debtor should not justly be held accountable."[67]

Based on a plain reading of this phrase, it is a clearly higher standard than the mere "for cause" standard set forth in both Federal Rule of Bankruptcy Procedure 9006(b) (governing extensions of time generally) and Bankruptcy Code section 1121(d)(1) (governing extensions of a non-Subchapter V debtor's exclusive period to file a Chapter 11 plan).[68] Courts interpreting this language as used in Section 1221 have held that "it effectively requires the bankruptcy court, before granting an extension request, to find that the delay necessitating the extension was caused by 'circumstances beyond the debtor's control.'"[69] COLLIER ON BANKRUPTCY – a leading bankruptcy law treatise – explains the rationale for this requirement as follows:

> [T]he 90-day limitation was probably included in chapter 12 for the benefit of creditors rather than for the benefit of the debtor. Because chapter 12 lacks the safeguards for creditors that are provided in chapter 11, the 90–day limitation . . . is [one of] the primary protection[s] for creditors against a debtor's languishing in chapter 12 without confirming a plan. Thus, it is appropriate that the debtor should be required to meet a stringent burden if the debtor seeks an extension of the 90-day period.[70]

---

[67] 11 U.S.C. § 1221.

[68] In a Subchapter V case, *only* the debtor may file a plan. 11 U.S.C. § 1189(a). In a traditional Chapter 11 case, the debtor initially has the exclusive right to file a plan, but that exclusive right may expire or be terminated; it may also be extended "for cause." *See* 11 U.S.C. § 1121.

[69] *Davis v. U.S. Bank, N.A. (In re Davis)*, BAP No. CC–16–1390–KuLTa, 2017 WL 3298414, at *3 (BAP 9th Cir. Aug. 2, 2017) (unpublished) (quoting *First Sec. Bank & Trust Co. v. Vegt,* 511 B.R. 567, 585 (N.D. Iowa 2014)).

[70] 8 COLLIER ON BANKRUPTCY ¶ 1221.01[2] (16th ed. 2020).

In *Trepetin*,[71] a recently-reported case addressing issues similar to those presented here, the court analyzed – by reference to Section 1221 – whether a Chapter 7 debtor could convert its case to Subchapter V of Chapter 11 and extend the Section 1188(b) and 1189(b) deadlines.[72] The court also undertook a textual analysis of the words "justly" and "accountable," by reference to their dictionary definitions, determining that "justly" means "in accordance with justice, law or fairness," and that "accountable"  is best defined as "responsible" or "liable to be called to account or to answer for responsibilities and conduct."[73] From these definitions, the court then concluded that the appropriate inquiry is "whether the Debtor is fairly responsible for his inability to timely submit his status report, attend the status conference, or file a plan in this Subchapter V case."[74]

This Court submits that this is a slightly different question than the inquiry posed by the statute. The statute asks if the need for an extension is due to *circumstances* beyond the debtor's control. *Trepetin*, on the other hand, asks whether *the debtor* was responsible for his inability to meet these deadlines. From that question, *Trepetin* then concludes that the debtor was not responsible for his inability to meet these deadlines, because his previously-filed Chapter 7 case and the

---

[71] 2020 WL 3833015.

[72] *Id.* at *5-6.

[73] *Id.* at *6 (quoting *Justly*, OXFORD ENGLISH DICTIONARY ONLINE, oed.com/view/Entry/102238?redirectedFrom=justly#eid (last visited July 7, 2020); *Accountable*, OXFORD ENGLISH DICTIONARY ONLINE, oed.com/view/Entry/1198?redirectedFrom=accountable#eid (last visited July 7, 2020)).

[74] *Id.*

conversion process and its requirements necessarily left him beyond the new deadlines.[75] This Court disagrees with that conclusion as well. The circumstances in *Trepetin* were entirely within the debtor's control: he filed for Chapter 7 and he elected to convert to Chapter 11 and proceed under Subchapter V. No external factors – beyond his control – contributed to his inability to comply with these deadlines. That new Subchapter V became available after he filed his Chapter 7 case is not – in this Court's view – such a circumstance beyond the debtor's control that would justify an extension.

For similar reasons, this Court also disagrees with *Ventura*[76] and *Twin Pines*.[77] In both cases, courts overruled the U.S. Trustee's objections to debtors proceeding under Subchapter V after expiration of these statutory deadlines, and held that the debtors were not required to comply with deadlines that expired before they could have elected to proceed under Subchapter V.[78] Although the U.S. Trustee apparently couched its concerns in *Ventura* in terms of "practicality and scheduling issues,"[79] this Court views the U.S. Trustee's arguments in *Ventura* (and *Twin Pines*) as substantive, textual arguments. Congress purposefully set a short deadline for a debtor to file a plan under Subchapter V, and set a very high standard for an extension of that deadline. To excuse a debtor's compliance with these deadlines

---

[75] *Id.*

[76] 615 B.R. 1.

[77] 2020 Bankr. LEXIS 1217.

[78] *Ventura*, 615 B.R. at 15; *Twin Pines*, 2020 Bankr. LEXIS 1217 at *7, 11.

[79] *Ventura*, 615 B.R. at 15.

because they did not previously exist is to effectively pick and choose which provisions of Subchapter V should apply to a debtor's case. That could not be what Congress intended; if a debtor elects to proceed under Subchapter V, it must comply with *all* its provisions, including the statutory timelines.

That being said, Congress certainly did contemplate a Subchapter V debtor needing additional time to file a plan (and to conduct the status conference), but set a high standard for a court to grant that request: "circumstances for which the debtor should not justly be held accountable." Where a debtor elects into Subchapter V after expiration of the statutory deadlines, however, the debtor should justly be held accountable for those circumstances, because the debtor created them. It was the debtor that made the decision to elect into Subchapter V after expiration of these deadlines. No circumstances beyond the debtor's control caused the debtor to make that decision.

A comparison of *Trepetin*, *Ventura*, and *Twin Pines*, on the one hand, with a timely hypothetical, on the other hand, illustrates this point. Suppose a debtor filed a Chapter 11 case under Subchapter V on February 20, 2020 – the day after its effective date and about a month before the COVID-19 pandemic began severely affecting commerce throughout the United States. Consistent with the purpose of Subchapter V – "to streamline the process by which small business debtors reorganize and rehabilitate their financial affairs"[80] – the debtor is prepared to meet the

---

[80] *See* note 32, *supra*.

statutory deadlines and immediately begins working with the Subchapter V trustee[81] to prepare financial projections and negotiate plan terms with creditors. But then, about a month into its case, local government authorities order the debtor's business to be shut down for a period of time to stem the spread of the virus. The effect of this governmental order causes the debtor to have to completely rework its financial projections and renegotiate with its creditors, rendering it unable to meet the Subchapter V statutory deadlines. Such a scenario – in this Court's view – *would* establish that the need for an extension is attributable to circumstances for which the debtor should not justly be held accountable.

And while the debtor's case here – and its difficulties in seeking to reorganize – were clearly impacted by COVID-19, this case is distinguishable from the hypothetical scenario outlined above. Here, while certainly the debtor is not responsible for COVID-19, and its present difficulties *in seeking to reorganize* may be fairly attributable to circumstances for which it should not justly be held accountable, its inability *to meet the statutory deadlines* in this case is *not* due to COVID-19 or the fact that Subchapter V first became available after Seven Stars commenced this case. Seven Stars' inability to meet the statutory deadlines is due solely to Seven Stars' election to amend its petition to proceed under Subchapter V after expiration of those

---

[81] A Subchapter V trustee is specifically charged with the duty to "facilitate the development of a consensual plan of reorganization." 11 U.S.C. § 1183(b)(7). This role should include working not only with the debtor, but with creditors as well, to facilitate negotiation of a consensual plan. A substantial part of the Subchapter V trustee's pre-confirmation role, therefore, should be to serve as a *de facto* mediator between the debtor and its creditors.

deadlines. Does this create an unfair distinction? Perhaps it does. But does it dictate the right result under the statute? This Court thinks it does.[82]

## III.    CONCLUSION.

Subchapter V is intended to be an expedited process. The debtor has the opportunity to use new, powerful tools to reorganize and save its business; but it must do so quickly. Thus, the notion that Congress intended to permit a debtor to first try

---

[82] Because the Court is basing its ruling on a plain reading of the applicable statutes and rules, the Court need not address MDG's vested rights and retroactivity arguments. *See* note 60, *supra*. The Court does observe, however, that in granting Seven Stars some relief (as permitted, in this Court's view, under its lease) due to COVID-19 from the requirement that it timely pay rent while being legally prohibited from using its leased premises, and ordering that the deferred rent be paid in full as an administrative expense claim on the effective date of a Chapter 11 plan, the Court was ruling consistent with the mandate of 11 U.S.C. § 365 (and the Court's reading of the lease) that administrative rent must be paid in full as a condition of assumption. The Court merely deferred the deadline to comply with this requirement due to COVID-19 and applicable provisions of the lease (including the *force majeure* clause, which did not excuse payment during a *force majeure* event, but which also did not specifically require *timely* payment during such event).

Although new Bankruptcy Code section 1191(e) does permit payment of administrative expense claims under Section 503(b) through a plan (as opposed to the requirement for regular Chapter 11 cases that administrative expense claims be paid in full on the effective date of a plan, 11 U.S.C. § 1129(a)(9)(A)), the unpaid administrative rent here is not the type of administrative expense claim that would qualify for this treatment under Section 1191(e). Section 1191(e) specifically refers to claims of a kind specified in paragraphs (2) or (3) of Section 507(a). Section 507(a)(2) then refers to administrative expenses allowed under Section 503(b) (and Section 507(a)(3) refers to claims arising under Section 502(f) in involuntary cases, which is not applicable here). Nowhere in Section 503(b), however, is any mention of post-petition rent obligations. That is because a debtor's obligation to pay post-petition rent is governed solely by Section 365, not by Section 503(b). As such, even though new Section 1191(e) permits certain administrative expense claims to be paid out over the term of a plan, this provision undoubtedly does not apply to administrative rent. And, but for COVID-19 and the lease provision that does not specifically require timely payment of rent during a *force majeure* event, Section 365(d)(3) requires that post-petition rent be timely paid, with the sole exception that the deadline to pay rent due within the first 60 days of a case may be extended for cause, but not beyond such 60-day period. Accordingly, even if Seven Stars was permitted to proceed under Subchapter V, it could not confirm a plan that did not provide for payment in full of MDG's administrative rent claim on the effective date of the plan.

reorganizing through a traditional Chapter 11 case or a non-Subchapter V small business case (or even that a debtor might first seek to liquidate under Chapter 7), before giving it another try under Subchapter V after expiration of the statutory deadlines, is plainly inconsistent with the statute. This Court therefore disagrees with *Trepetin*,[83] *Ventura*,[84] *Twin Pines*,[85] and the other recently-reported cases that would liberally read Sections 1188(b) and 1189(b) to permit extensions of these deadlines for a debtor who has elected to proceed under Subchapter V after these deadlines had already passed.

Where a debtor elects to proceed under Subchapter V after the statutory deadlines have passed, it cannot be said that the need for an extension of these deadlines is attributable to circumstances for which the debtor should not justly be held accountable. The debtor *should* justly be held accountable for these circumstances; the debtor made this election after the deadlines expired. That decision by a debtor should not foist upon creditors all of the added powers of a Subchapter V debtor without one of the most significant protections afforded to creditors under the SBRA – that the case proceed expeditiously.

Accordingly, it is

**ORDERED** that:

1.      This case is **DISMISSED.**

---

[83] 2020 WL 3833015.

[84] 615 B.R. 1.

[85] 2020 Bankr. LEXIS 1217.

2.     The adversary proceeding, *Seven Stars on the Hudson Corp. v. MDG Powerline Holdings, LLC and XBK Management, LLC*, Adv. No. 19-01230-SMG, however, will remain open pending further order of the Court.

###

Copies furnished to:

All interested parties by Clerk of Court