# MDG EXHIBIT "4"

## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

In re:                                                    Case No. 19-17544-SMG

SEVEN STARS ON THE HUDSON                                 Chapter 11
CORP.

                    Debtor
_____ /

## DEBTOR'S RESPONSE TO ORDER TO SHOW CAUSE WHY CASE SHOULD NOT BE DISMISSED

Debtor and debtor-in-possession Seven Stars on the Hudson Corp. ("Debtor"), by and through its undersigned counsel, hereby files its response to this Court's *Order to Show Cause Why Case Should Not Be Dismissed* [ECF 179] ("Order"), in accordance with decretal paragraph 1 of the Order. In brief, this Court has the necessary lawful power and authority to allow this case to proceed under new subchapter V of chapter 11 of the Bankruptcy Code, and, on the facts of this case, it would be a sound exercise of such lawful power and authority for this Court to so allow.

## Background

This case was initiated by the filing of a voluntary chapter 11 petition for relief on June 5, 2019 ("Petition Date"). As fairly reflected by the entire record of this case, three general issues have been prominent in this case from the Petition Date: (i) the Debtor's relationship and dealings with its now former franchisor, Rockin' Jump, LLC ("Rockin' Jump"); (ii) the Debtor's relationship and dealings with its secured creditor, Wells Fargo Bank, N.A. ("Wells Fargo"); and (iii) the Debtor's relationship and dealings with both its business premises landlord, MDG Powerline

1

Holdings, LLC ("MDG"), and MDG's premises managing agent, XBK Management, LLC ("XBK").

The Debtor believes it is fair to say that it has continuously and, to date, successfully addressed the first two of these issues. Rockin' Jump is no longer an issue at all, after the Debtor and Rockin' Jump concluded their relationship through a settlement approved by this Court [ECF 152 & 161]. As to Wells Fargo, the Debtor and Wells Fargo have worked together since the Petition Date, to their mutual satisfaction to date—the record of this case shows no adversary proceedings or even contested matters between these parties. The cooperation and flexibility demonstrated by Wells Fargo are appreciated by the Debtor.

Obviously, however, the Debtor's dealings with MDG and XBK have been of a different tenor. The Debtor filed adversary proceeding 19-01230-SMG, *Seven Stars on the Hudson Corp. v. MDG Powerline Holdings, LLC and XBK Management, LLC* ("Adversary Proceeding" or "AP") against MDG and XBK on July 19, 2019, some six weeks after the Petition Date. Thus, on the date of the hearing scheduled by the Order (July 28, 2020), the Adversary Proceeding will have been pending for just over one year. Of course in addition to the Adversary Proceeding there have also been disputes and contested matters between the Debtor and MDG/XBK, including a Motion for Preliminary Injunction and Temporary Restraining Order [AP ECF 36 & 44] and the Debtor's now granted Motion to Assume Lease [ECF 80, 129, 164, 168, 170, 172]. Nevertheless, until the advent of the Covid-19 crisis (approximately mid-March 2020, which has been particularly acute in this district and division, the Debtor timely met all its rent obligations to MDG both pre- and post-petition. Those post-petition rents not paid as a result of the temporary government-mandated shut down of the Debtor's business premises are now a chapter 11 administrative expense claim which must be paid [ECF 172].

Coincidentally, and fortuitously, about one month before the local onset of the Covid-19 emergency, new subchapter V of chapter 11 came into effect (February 19, 2020). The Debtor proffers that had the option of subchapter V existed at the Petition Date, it certainly would have elected to proceed thereunder from the start. But the legislation proposing subchapter V had not yet even been introduced into Congress at that time. *See In re Progressive Solutions, Inc.,* 2020 Bankr. LEXIS 467, *2-*8 (Bankr. C.D. Cal., February 21, 2020) (detailed discussion of the legislative history of Small Business Reorganization Act of 2019, Public Law No. 116-54, which created subchapter V).

Now, in light of the local Covid-19 emergency and the resulting unavoidable administrative rental obligations thereby incurred,[1] the Debtor has amended its initial chapter 11 petition in this case to elect subchapter V treatment [ECF 178]. In response to that election, the Court entered the Order and requested briefing. As stated by the Court: "While Federal Rule of Bankruptcy Procedure 1009 provides that '[a] voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed,' **the issue now before the Court is what consequences flow from the Debtor's decision to amend its voluntary petition to elect to proceed under subchapter V more than a year into this case.**" Order at p. 3 (emphasis added).

## I.    Discussion

### A.   Permissibility of Amendment to Subchapter V Generally

---

[1] The Debtor does not dispute the gross amount of the administrative rent obligations (monthly rent X number of payments missed) due under a chapter 11 plan, whether in "standard" chapter 11 or under new subchapter V. However, it does note that such a gross number may be subject to certain offsets (e.g., a full rent payment for March 2020 was made, but the Debtor was not afforded the use of its business premises for the full month of March 2020). In addition, potential damages asserted against MDG in the Adversary Proceeding, if awarded, could very easily exceed any such administrative rent claim. *See* First Amended Complaint [AP ECF 30] at Count III, asserting violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 et seq., which provides for treble damages.

As expressly framed by the Order, it appears the Court readily accepts the proposition that a standard chapter 11 petition may be amended to a petition under subchapter V. Although subchapter V has been in effect for less than five months as of this writing, with accordingly scant reported case law, this also appears to be the universal view of the bankruptcy courts that have considered the matter so far. *See generally SBRA: Case Law So Far Suggests an Enthusiastic Bench,* ABI Journal, June 2020, by the Hon. Hannah L. Blumenstein (Bankruptcy Judge, N.D. Cal.), at p. 24, and cases collected therein. Accordingly, given the Court's view of this issue, the Debtor will not extensively brief this threshold issue before addressing the issue for briefing as expressly stated by the Court. However, at least a brief discussion of some of these cases is noteworthy for affirming why this case so qualifies.

What may be considered the early lead case on the subject is *Progressive Solutions,* 2020 Bankr. LEXIS 467. As a technical matter much of the *Progressive Solutions* decision may be considered dicta, for while it plainly finds that a standard chapter 11 case may become a subchapter V case, the debtor in that case improperly tried to do so by motion instead of amendment of the original chapter 11 petition, and the motion was denied without prejudice on that basis. Id. at *14. However, even to the extent it may be deemed dicta, it is unquestionably well-reasoned and thus has been widely followed as to its general conclusion that there is "no legal reason to restrict a pending Chapter 11 case to re-designate to a [s]ubchapter V case." Id. at *13. *See, e.g., In re Moore Properties of Person Cty., LLC*, 2020 Bankr. LEXIS 550, *17 (Bankr. M.D. N.C., February 28, 2020); *In re Body Transit, Inc.*, 613 B.R. 400, 404-405 (Bankr. E.D. Pa., March 24, 2020); *In re Ventura*, 2020 Bankr. LEXIS 985, *25 (Bankr. E.D. N.Y, April 10, 2020).

Both *Progressive Solutions* and *Moore Properties* go into some detail to address the issue of whether retroactively allowing amendment to subchapter V under the particular facts of their

4

respective cases would unfairly violate the rights of other participants (i.e. creditors) in the bankruptcy case by improperly disturbing vested property rights. In both cases those courts held that it would not, a conclusion that applies equally here, if not more so.

In *Progressive Solutions*, the original chapter 11 petition was filed on November 18, 2018; the motion to amend subchapter V (again, the wrong procedural method) was filed January 30, 2020, over 14 months later. 2020 Bankr. LEXIS 467, *1-*2. While *In re Moore* dealt with a much shorter interval (approximately two weeks), it took a very broad view of permissible changed circumstances allowed from the existing chapter 11 case to an amended subchapter V case. For example, the alteration of the "fair and equitable" standard (an inherent part of subchapter V) to a pending case would not alone constitute unfair prejudice to creditors. 2020 Bankr. LEXIS 550, *11.

Similarly, in *Ventura*, the original case was filed on October 24, 2018. 2020 Bankr. LEXIS 985, *9. The amendment to subchapter V was effected on March 6, 2020, over 16 months later. Id. at *15. In between those two dates the Debtor had proposed a plan, as had the creditor (Gregory) objecting the subchapter V amendment:

> Gregory also argues that retroactive application of the SBRA to the Debtor's case is impermissible because it would be prejudicial to Gregory with respect to its "vested rights." Gregory interprets vested rights to mean prior orders issued by this Court permitting Gregory to file its own plan and approving Gregory's disclosure statement, along with the Court's finding that the Debtor's proposed disclosure statement was patently unconfirmable.

Id. at *26. Nevertheless, the court in *Ventura* found the amendment to subchapter V permissible, stating:

> Given that subchapter V was not available to the Debtor on the Petition Date and the Debtor has made very clear from the outset the nature of Property as a business, the Court will not penalize the Debtor because after careful analysis by Congress the law has been amended to address the needs of debtors that engage in the type of business she operates. **These**

**types of debtors who are willing to risk everything to start and maintain their own businesses should not be penalized, rather, they should be applauded. Gregory will retain many of the rights it had at the inception of the case, any delay caused by this ruling is not sufficiently prejudicial to Gregory, given the current economic conditions.** For these reasons, the Court finds that the SBRA applies to the Debtor's case in its totality.

Id. at *33-34 (emphasis added).

In this case, nothing of the kind (or even remotely equivalent) to what had transpired in *Ventura* has yet occurred in this case—the plan process not yet even started here. No creditor will be as affected as was the objecting creditor in *Ventura,* where a failed Chapter 11 process by the Debtor was effectively granted a complete restart through conversion to subchapter V. Certainly no creditor would be *unfairly* prejudiced, but instead all creditors will be treated strictly in accord with what Congress has now determined to be fair and equitable through its enactment of new subchapter V. Accordingly, to the extent it appears from the Order that this Court accepts that an amendment of a case from "standard" chapter 11 to subchapter V is generally permissible, this Court is seemingly in accord with all the cases to date that have addressed this issue.

B.   Consequences Flowing from the Debtor's Decision to Amend

In the Order, the Court raises a very specific concern for which it has requested this briefing. That concern is largely procedural in nature, although it would have profound substantive effects. As stated by the Court:

> Particularly with respect to the plan filing deadline, a debtor's failure to file a disclosure statement or to file or confirm a plan within the time fixed by the Bankruptcy Code constitutes cause for dismissal of this case. Similarly, to confirm a chapter 11 plan – even one under new subchapter V--the plan must comply with the applicable provisions of the Bankruptcy Code, and the plan proponent must comply with the applicable provisions of the Bankruptcy Code. Now that compliance with both sections 1188(a) and 1189(b) is impossible, it appears that the Debtor cannot confirm a plan and that this case should therefore be dismissed.

6

Order at p. 3 (footnotes omitted).

Here, the Court has highlighted an issue that has been somewhat less decisively resolved by the few reported decisions. But the more fully considered decisions all *clearly* favor the view the view the Bankruptcy Code and Federal Rules of Bankruptcy Procedure more than adequately provide the tools for this Court to address its understandable concerns.

The Order (footnote 7) cites two cases it views as echoing these concerns. The first is *In re Double H Transp. LLC*, 2020 Bankr. LEXIS 1341 (W.D. Tex., March 5, 2020), wherein the court raises concerns similar to those in the Order quoted above. What the court in *Double H Transp.* did not do, however, is conduct *any* discussion as to whether existing rules, conventionally applied, could overcome these concerns. In fairness to that court, we are not privy to what exactly was briefed or argued before it.[2] Regardless, while the *Double H Transp.* opinion raises the same procedural issues raised by the Order, it does very little in addressing whether these concerns are insurmountable or merely inconvenient.

The other case cited by this Court as to such concerns is *Moore Properties,* 2020 Bankr. LEXIS 550 at *17, fn. 18. Again, while that court fairly raises such concerns, it does not meaningfully conduct any discussion of how such concerns might be addressed. In *Moore Properties* the reason is obvious—the point is consigned to a brief footnote because it is dicta mentioned in passing. The interval between the original filing and amendment in *Moore Properties* was no more than two weeks, so no such concerns actually presented themselves in that case. As such, it would be patently unfair to expect that court, which had thoroughly examined several other

---

[2] A review of the PACER filings in the case does not reveal extensive briefing of the issue, unlike what this Court has now requested.

issues actually relating to the facts before it, to dissect at length a hypothetical "other case" not before it.

Conversely, the cases that *have* more fully considered these concerns have unanimously found no such insurmountable barriers. The Court itself cites one such case, *In re Ventura*. In *Ventura* the court stated:

> [B]ecause the order for relief in the Debtor's case was entered on October 24, 2018, the Debtor's 90-day deadline to file a plan has expired, and it does not appear that the SBRA trustee can effectively function as the facilitator of a consensual plan. Furthermore, many status hearings have already taken place in this case without the participation of a subchapter V trustee. **First, the Court notes that both the 90 day deadline to file a plan and the 60 day deadline to hold a status conference may be extended if the need for an extension is attributable to circumstances for which the debtor should not be justly held accountable. Given that the Debtor's case was filed over fifteen months ago, the Court finds that to argue the Debtor should have complied with the procedural requirements of a law that did not exist is the height of absurdity. The Debtor is not required to comply with deadlines that clearly expired before the Debtor could have elected to proceed as a subchapter V debtor.**

2020 Bankr. LEXIS 985 at *24-25.

Similarly, the Court in *Progressive Solutions* reached an identical conclusion.  There the court stated:

> The only comprehensive objections raised at the hearing by counsel of the Office of United States Trustee were procedural in nature. The OUST made very good points regarding the practicality and scheduling issues arising from a SBRA designation of a pre-effective date pending case.7 The OUST raised, for instance, the [*11] problem of holding a timely Initial Debtor Interview (the "IDI"), and a timely Section 341(a) Meeting of Creditors that would include a Subchapter V Trustee participation. The OUST raised the good question of the required Debtor Status Conference Report and the initial Status Conference for the Subchapter V case, but again conceded that there was no statutory or rule which prohibited the Court from extending the time to hold the status conference or submit a report. The OUST raised the timing issue of the 60-day Plan filing requirement (from the Entry of Order for Relief), but then conceded that the Court may extend that time for cause, as long as the delay was not attributable the Debtor. **The Court points out that all of these timing requirements could be reset in order to provide due process to all parties involved, unless vested rights of parties would be abridged or otherwise prejudiced.**

2020 Bankr. LEXIS 467 at *10-11 (emphasis added).

However, the by-far most detailed analysis (across several pages) addressing the concerns raised by this Court is found in *In re Twin Pines, LLC,* 2020 Bankr. LEXIS 1217 (Bankr. D. N.M., April 30, 2020). In *Twin Pines*, the *exact* concerns raised by this Court in the Order were argued by the Office of the United States Trustee. In addressing these concerns, Judge Jacobvitz made the following initial observation:

> The U.S. Trustee's objection to the Amended Petition rests on subchapter V's procedural provisions and the fact that the 45-day period specified by 1129(e) expired before Debtor elected subchapter V. Two preliminary observations put those procedural provisions in context  First, neither the Bankruptcy Code nor the Bankruptcy Rules impose any time limit on the debtor's subchapter V election. Under Interim Bankruptcy Rule 1020(a), a debtor elects subchapter V treatment on the petition. Fed. R. Bankr. P. 1009(a) provides that a "voluntary petition . . . may be amended by the debtor as a matter of course at any time before the case is closed." Further, the Bankruptcy Code does not impose any other limitation on the election of subchapter V so long as the debtor is eligible to proceed under subchapter V.

Id. at *5.

It should be noted that the underlying original petition in Twin Pines was filed on February 12, 2019—its effort to amend to subchapter V was filed on February 28, 2020, over a year later, a time frame remarkably similar to that now before this Court. Id. at *1-2

Passing over to specifics—including the *exact* concerns raised by this Court—Judge Jacobvitz observed:

> The U.S. Trustee argues that Debtor cannot elect subchapter V at this point, as a matter of law, because the deadlines for the subchapter V status conference and plan of reorganization have long since passed, rendering compliance with subchapter V impossible. §§ 1188, 1189. The Court disagrees.
>
> The Court "may extend the period" in which the status conference must be held and the plan filed "if the need for an extension is attributable to circumstances for which the debtor should not justly be held accountable." § 1188(a), (b); § 1189(b). Here, the need for an extension arises from the fact that the SBRA was not effective until February 19, 2020—a circumstance for which Debtor should not justly be held accountable. Debtor filed a motion

9

to proceed under subchapter V eight days after the effective date. Therefore, the Court has discretion to extend the deadlines if Debtor's case proceeds under subchapter V.

Id. at *6-7.

The discussion in *Twin Pines* continues on for several pages, addressing each and every point raised by the OUST in that case (including some not raised directly by the Order here). Judge Jacobvitz's detailed reasoning deserves a reading in full. But in lieu of that here, it is his conclusion that is most pertinent:

> Although couched in terms of whether Debtor is entitled to amend its petition to elect subchapter V, these arguments really go to whether the Court should exercise its discretion to extend the subchapter V deadlines for a status conference and the filing of a plan. Unless the Court extends those deadlines, this Court's ruling that Debtor is entitled to elect subchapter V will be a pyrrhic victory for Debtor. Without the time extensions, Debtor's chapter 11 case would be converted or dismissed, even if governed by subchapter V.

Id. at *8.[3]

By every objective measure this Debtor has been a model debtor-in-possession since the Petition Date. While its issues with its former franchisor drove it into Chapter 11, it has since resolved those issues. It has co-existed peaceably with its secured creditor, Wells Fargo. It has avoided any major transgressions to incur action by the Office of the U.S. Trustee. And it has prosecuted, for over a year, an adversary proceeding that offers the promise of real benefit to its

---

[3] While preparing this Response, the Debtor also became aware of the very recent decision of *In re Trepetin*, 2020 Bankr. LEXIS 1770 (Bankr. D. Md., July 7, 2020). *Trepetin* concerns a conversion to subchapter V of chapter 11 after some four months in *chapter 7*. Id. at *3. Thus, while not directly on point, the court in *Trepetin* utilized many of the same authorities cited herein to allow such a conversion notwithstanding what would appear to be facially expired subchapter V deadlines. Id. at *12, fn. 11. In doing so the court observed:

> The Court can envision a case in which the circumstances surrounding conversion could weigh against any extension of the deadlines under Subchapter V. For example, if the Debtor were manipulating the timing of his original bankruptcy filing and his requested conversion in a manner that unfairly prejudiced some or all of his creditors, an extension would not be warranted. Likewise, if the Debtor failed to comply with his obligations under the Code in his original bankruptcy case or commenced his case after the effective date of SBRA and had missed a plan deadline prior to requesting conversion or making a Subchapter V election, then perhaps an extension would not be warranted.

Id. at *16. Needless to say, no factors of this type exist in this case.

10

creditors.[4] The only major disruption to its case has been a world-wide pandemic, which the Debtor is doing its good faith best to weather. Subchapter V appears to be the only way forward, and as the reasoning and logic of *Ventura*, *Progressive Solutions* and *Twin Pines* hold, this Court has both the discretion and power to allow that to happen. It should do so.

The Salkin Law Firm, P.A.
P.O. Box 15580
Plantation, FL 33318
954-423-4469

By: /s/ Sonya S. Slott, Esq.
    Sonya S. Slott, Esq.
    FBN 603910

By: /s/ Mark Bonacquisti, Esq.
    Mark Bonacquisti, Esq.
    FBN 0703257

By: /s/ Zachary Malnik, Esq.
    Zachary Malnik, Esq.
    FBN 1010272

---

[4] If, notwithstanding the argument presented herein, the Court concludes dismissal of the main bankruptcy is warranted, the Debtor requests the opportunity to further brief the issue of this Court retaining jurisdiction over the Adversary Proceeding notwithstanding main case dismissal. That issue is beyond the scope of the briefing requested by the Order, and would require substantial briefing on its own. However, the Debtor would note that under longstanding Eleventh Circuit precedent (and a substantial body of other case law) such a result is entirely possible. *See In re Morris*, 950 F.2d 1531 (11th Cir. 1992).