UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

IN RE:

SEVEN STARS ON THE HUDSON CORP.,　　　CASE NO. 20-19106
　　　　　　　　　　　　　　　　　　　　　　　　CHAPTER 11
　　　　Debtor.
_____/

## PLAN OF REORGANIZATION FOR SMALL BUSINESS

### ARTICLE I

### SUMMARY

This Plan of Reorganization (the "Plan") under Subchapter V of chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of SEVEN STARS ON THE HUDSON CORP. (the "Debtor") from future income.

This Plan provides for one class of secured claims and one class of unsecured claims. This Plan also provides for the payment of administrative claims.

All creditors should refer to Articles V through VIII of this Plan for information regarding the precise treatment of their claim. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

### ARTICLE II

### DESCRIPTION AND HISTORY OF THE DEBTOR'S BUSINESS

The Debtor was formed in April 2015 to operate a trampoline park. The business operates within a location known as Xtreme Action Park which has various amusement alternatives. The Debtor previously filed a chapter 11 proceeding after the landlord and its agent

Xtreme Action Park engaged in unfair business practices resulting in significant loss of revenues. This resulted in the debtor's inability to fulfill its financial obligations to the SBA lender and its former franchisor, "Rockin' Jump". The debtor filed a lawsuit against the landlord and its agent Xtreme Action Park and also reached an agreement with its former franchisor to terminate the franchise agreement. The Debtor now operates as "Spacebound Trampoline Park".

While the previous case was pending, the corona virus pandemic (COVID-19) spread throughout the world. The Debtor's operations were shut down by Broward County from March 18, 2020 to June 3, 2020. When the Debtor reopened in June, it did so with a limited capacity. Without any income, the Debtor was unable to pay rent and other obligations. With the inability to cure its payments due under the lease prior to the confirmation of the previous case, the Debtor's previous case was dismissed by the Court for failure to meet deadlines.

The Debtor filed the instant case on August 24, 2020. At the time of the filing of this case, the Debtor was approximately five (5) months behind on its rent. The Debtor's principals will be obtaining funds from a third party which will be sufficient to cure the amount owed to the landlord.

Broward County has lifted its restrictions and the Debtor is operating at full capacity and the Debtor's income is increasing each week. However, it is believed that COVID-19 will affect the business operations until June, 2021, limiting the income to some extent. As such, the Debtor has worked out an arrangement with Wells Fargo wherein the Debtor will make interest only payments through June, 2021.

For purposes of confirmation, Wells Fargo has agreed to bifurcate its claim to have a

secured claim of $480,089.03 and an unsecured claim of $923,726.10, for purposes of this bankruptcy only. The agreed upon terms within this bankruptcy have no affect and in no way modify the rights of Wells Fargo as to the guarantors and collateral outside the bankruptcy estate.

The Debtor is engaged in a lawsuit with its landlord and Xtreme Action Park. The Debtor has sought damages against the landlord and Xtreme Action Park for breach of covenant of quiet enjoyment; breach of implied duty of good faith and fair dealing; violation of FDUPTA; and, tortious interference with advantageous business relationships. The case is pending as an adversary proceeding before the U.S. Bankruptcy Court, Southern District of Florida, Case No. 19-01230-SMG. The matter is set for a Pre-Trial Conference on July 6, 2021. Should the Debtor obtain any recovery from the landlord, the proceeds will be dedicated to the payment of unsecured creditor, less any expenses of litigation.

## ARTICLE III

## **LIQUIDATION ANALYSIS**

To confirm the Plan, the Court must find that all creditors and equity interest holder who do not accept the Plan will receive as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation.

At the time the case was filed, the Debtor had assets totaling approximately $480,089.03. However, Wells Fargo holds a secured claim in the amount of $1,403,815.10 leaving no funds available for unsecured creditors or equity interest holders.

ASSETS

    Bank accounts                                                        $ 96,023.66

| | | |
|---|---|---|
| Deposits: | | |
|   FPL | $ 2,000.00 | |
|   Landlord | $150,891.34 | |
| | | $152,891.34 |
| Inventory, equipment, office furniture, computers | | $ 54,020.00 |
| Accounts Receivables | | $188,984.03[1] |
| TOTAL ASSETS | | $491,919.03 |
| SECURED CREDITORS | | |
|   Landlord | | $ 150,891.34 |
|   Wells Fargo | | $1,403,815.10 |
| AMOUNT AVAILABLE FOR UNSECURED CREDITORS | | 0.00 |

## ARTICLE IV

## ABILITY TO FUND PLAN

The Debtor's ability to fully fund the plan and make payments is dependent on the ability of the company to continue to operate and generate sufficient revenue to pay its expenses in the ordinary creditor. A copy of the projected budget is attached hereto.

The Debtor's sales are seasonal. The projections show that the disposable income will average approximately $6,000.00 a month. This amount is sufficient to pay only the secured creditor, Wells Fargo.

The Debtor must also cure the arrearage with the landlord in order to assume the lease. The Debtor is obtaining capital infusion from a third party for the amount owed. At the time of the filing of this plan, the amount outstanding is $236,848.78. The capital infusion will be sufficient to pay these funds and cure the outstanding obligation.

---

[1] The value of the accounts receivable it negligible as it appears uncollectible.

4

## ARTICLE V

### CLASSIFICATION OF CLAIMS AND INTERESTS

5.1     Class 1.     The allowed secured claim of Wells Fargo to the extent allowed as a secured claim under § 506 of the Code.

5.2     Class 2.     The general unsecured creditors.

5.3     Class 3.     The interests of the equityholder in the the estate.

## ARTICLE VI

### TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

6.1     Unclassified Claims. Under § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

6.2     Administrative Expense Claims. All other holders of administrative expense claims allowed under § 503 of the Code will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

## ARTICLE VII

### TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

The Plan shall provide for the payment of all expenses of this proceeding. The accompanying Plan of Reorganization divides creditors into the following classes:

**Class 1** – The allowed secured claim of Wells Fargo $480,089.03 will be paid over 10 ½ years. The loan will be amortized at 6% over 10 years. The Debtor will make interest only payments in the amount of $2,400.45 per month on December 1, 2020 through and including June 1, 2021. Thereafter, the payments will be $5,571.56 per month on the first (1st) day of each month

5

through November 1, 2030. At the end of the foregoing repayment term, the secured claim in this bankruptcy estate only will be deemed to be fully satisfied.

Wells Fargo's shall continue to have an allowed post-petition security interest and lien, to and against any and all assets of the Debtor, to the same extent and priority as Wells Fargo's properly perfected pre-petition security interest in all assets of the Debtor. The assets of the Debtor may not be sold or refinanced without proper notice and further order of the Court and written authorization of Wells Fargo.

Nothing herein shall modify or impair the mortgage lien of Wells Fargo on that certain real property described as follows:

> **LOT 7, LESS THE WEST 5 FEET, BLOCK 39, IMPERIAL POINT 2ND SECTION, ACCORDING TO THE PLAT THEREOF, RECORDED IN PLAT BOOK 54, PAGE 19, OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA.**

Nothing herein shall modify or impair the personal guarantees of Wells Fargo held against EDDY MANZO-BERDING and JENS A. BERDING for the subject loan between the parties herein. The overall claim amount of Wells Fargo shall remain intact and in the original amount due as of the date of this bankruptcy filing solely as to the above real property and personal guarantees that are outside the jurisdiction of the bankruptcy court in this case. Payments made pursuant to this Plan will be credited against the overall amount due to Wells Fargo under the loan documentation; however, the converse shall not apply such that external payments shall not be credited against payments due under this Plan.

This class is impaired.

**Class 2** – General unsecured creditors. General unsecured creditors' claims exceed $1,000,000.00. The Debtor cannot make a meaningful distribution to creditors. Consequently,

the creditors will receive no distribution. If the Debtor is successful in its litigation with the landlord and receives a recovery, the net proceeds will be dedicated to the payment to unsecured creditors on a pro-rata basis within fourteen (14) days of receipt of cleared funds by the Debtor. This class is impaired.

 **Class 3** – The equityholder of the Debtor shall retain its interest in the estate.

## ARTICLE VIII

## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.1 Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.2 Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.3 Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE IX

## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

 Assumed Executory Contracts and Unexpired Leases.

 The Debtor has a commercial lease with MDG Powerline Holdings, which will be assumed in accordance with the terms agreed upon by the parties, including the prompt cure of

outstanding obligations on or before confirmation.

The Debtor has leases with AT&T; CenterEdge; Spotify and Xobee. All of these leases or contracts will be assumed upon confirmation.

## ARTICLE X

## **GENERAL PROVISIONS**

7.1 <u>Definitions and Rules of Construction.</u> The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan and they are supplemented by the following definitions:

7.2 <u>Effective Date of Plan.</u> The effective date of this Plan shall be the first business day following fourteen (14) days after entry of the order of confirmation. However, if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

7.3 <u>Severability.</u> If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

7.4 <u>Captions.</u> The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

7.5 <u>Controlling Effect.</u> Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

7.6 <u>Binding Effect of the Plan.</u> The provisions of this Plan shall be binding upon the Debtor

and all Creditors receiving treatment under the Plan and shall inure to the benefit of the Reorganized Debtor, their predecessors, successors, assigns, agents, officers and partners.

7.7 The Debtors may settle, enforce, or adjust any claim or interest which belonged to the Debtor or to the estate prior to confirmation.

## ARTICLE XI

## DISCHARGE

If the Debtor's Plan is confirmed under 11 U.S.C. § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan to the extent specified in 11 U.S.C. § 1141(d)(1)(A), except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under 11 U.S.C. § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt: (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provide in § 1192; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

**The discharge will be fully effective against all creditors regardless of whether they have**

voted to accept or reject the Plan and regardless of whether the Plan is confirmed by consent or by resort to the provisions of § 1129(b) of the Bankruptcy Code. Except as otherwise provided in the Plan, the confirmation of the Plan vests all of the property of the estate in the Debtor free of liens.

Respectfully submitted

Seven Stars on the Hudson Corp.
By Jens Berding, President

BRIAN K. MCMAHON, P.A.
1401 Forum Way, 6th Floor
West Palm Beach, FL 33401
Tel (561) 478-2500
Fax (561) 478-3111
briankmcmahon@gmail.com

/s/ Brian K. McMahon
Brian K. McMahon
FL Bar No. 853704