**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

IN RE:                                                    CASE NO.: 20-19106 SMG
                                                         Chapter 11
SEVEN STARS ON THE HUDSON
CORP

     Debtor.
_____/

## WELLS FARGO BANK, N.A.'S MOTION FOR LIMITED RELIEF FROM THE AUTOMATIC STAY TO LIQUIDATE CLAIMS UNDER THE NOTE IN STATE COURT FORECLOSURE PROCEEDINGS

WELLS FARGO BANK, N.A. (the "Movant"), by and through its undersigned counsel, hereby files this Second Supplemental Motion for Relief from the Automatic Stay pursuant to Federal Rules of Bankruptcy Procedure 4001 and 9014 to lift the automatic stay imposed by 11 U.S.C. Section 362(a) for cause under 11 U.S.C. Section 362(d), or, in the alternative to confirm that there is no stay in effect, and in support of its motion states:

1.     Debtor filed for relief under Chapter 11 of the Bankruptcy Code on August 24, 2020 (the "Bankruptcy Case").

2.     The Court has jurisdiction of this matter pursuant to 28 U.S.C. Section 157(b)(2)(A), (b)(2)(G) and 1334.

3.     The Movant is a creditor of the Debtor, SEVEN STARS ON THE HUDSON CORP ("Debtor") by virtue of Promissory Note executed on August 29, 2016 relating in the original principal amount of $1,406,900.00 (the "Note"). A true and accurate copy of the Note is attached hereto as **Exhibit "A."**

4.     To secure this Note, the non-debtors, Jens Berding and Eddy Manzo-Berding

executed Commercial Guaranty documents as well as a Mortgage dated August 29, 2016

on real property located at 2108 NE 63rd Street, Fort Lauderdale, FL 33308 and described

as

**LOT 7, LESS THE WEST 5 FEET, BLOCK 39, IMPERIAL POINT 2ND SECTION, ACCORDING TO THE PLAT THEREOF, RECORDED IN PLAT BOOK 54, PAGE 19, OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA.**

(hereinafter the "Real Property").

A true and accurate copy of the Mortgage is attached hereto as **Exhibit "B."**

5.      Prior to the filing of this case, Creditor filed a Verified Complaint for Mortgage

Foreclosure, Enforcement of a Security Interest in and to Personal Property, Replevin and

Damages in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County,

Florida under case #CACE-19-003775 (the "Foreclosure Action"). The Foreclosure Action

relates to property owned by the non-debtors, Jens Berding and Eddy Manzo-Berding who

are also guarantors.

6.      While the Foreclosure Action does not relate to property of the estate, and

while the non-debtors have separate *in personam* liability pursuant to the Commercial

Guaranty documents, the Movant seeks stay relief to liquidate its claim against Debtor in

the Foreclosure Action because it has become apparent that the state court will cancel the

Note in the Foreclosure Action as a condition of the entry of an In rem Final Judgment in

Foreclosure with Assessment of Attorney's Fees and Costs as to the property of the non-

debtors. The cancelation of the Note, without liquidation of the amount due, would serve to

compromise Movant's Proof of Claim in the instant proceedings.

7.      "It is not uncommon for a bankruptcy court to grant a limited relief from stay

so that the amount of a claim can be quantified in some other forum." *Zecco v. United*

*States (In re Zecco),* 211 B.R. 109, 113 (D. Mass. Bankr.1997). "The terms of those orders permit the other proceed to continue to judgment but not beyond." *Id.*   See also *In re Saunders,* 103 B.R. 298 (N.D. Fla. Bankr. 1989)("[e]ven where a dischargeability issue is squarely apparent, it is within the discretion of the Bankruptcy Court to permit a closely related claim to be reduced to judgment in a state or other court of competent jurisdiction.")

8.      As one court has noted in a different context:

> …the stay may be lifted when there is an administrative need in the bankruptcy case to fix the amount of the claim and the claim dispute has been pending for considerable time in a non-bankruptcy forum. Issues of comity and economy may dictate that the non-bankruptcy forum conclude the resolution of that dispute…("[I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere") (emphasis added and citations omitted).

*In re Quad Sys. Corp.,* 2001 Bankr. LEXIS 2284 (E.D. Pa. Bankr.)

9.      The test for determining whether the automatic stay should be lifted to allow continuation of a pending lawsuit as to a debtor is whether (a) any great prejudice, either to the bankrupty estate or the debtor will result from the continuation of a civil suit; (b) the hardship to the [non-bankrupt] by maintenance of the stay considerably outweighs the hardship of the debtor, and (c) the creditor has a probability of prevailing on the merits. See *In re Makerewicz,* 121 B.R. 262 (S.D. Fla. Bankr. 1990), *citing In re Pro Football Weekly,* 60 Bankr. 824, 826 (N.D. Ill. 1986).

10.     In the matter *sub judice,* the relief from stay requested herein is limited to the ability to liquidate the amount the Movant's claim pursuant to the Note, and nothing more. Such relief will not cause prejudice or hardship to the bankrupt estate. In contrast, if stay relief is not afforded to the Movant, it is left with the choice of delaying its prosecution of its

foreclosure claim against the non-debtors or, in the alternative, compromising its claim against the estate in the Bankruptcy Case through the cancellation of the Note. Accordingly, maintenance of the stay as to the limited matter at issue causes far more hardship to Movant than stay relief would cause to the Debtor. Finally, the claim at issue is premised upon a negotiable instrument and the Movant has a substantial likelihood of prevailing on the merits.

## **RELIEF REQUESTED**

11.    By way of this Motion, Movant, WELLS FARGO BANK, N.A. seeks limited relief from the stay to liquidate its claim on the Note in the Foreclosure Action for the reasons stated herein at length.

WHEREFORE, Movant, WELLS FARGO BANK, N.A. respectfully requests this Honorable Court enter an Order granting WELLS FARGO BANK, N.A. relief from the automatic stay to stay to liquidate its claim on the Note in the Foreclosure Action related to the non-debtor's property for the reasons stated herein at length.

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A) and that a true and correct copy of the foregoing was furnished via U. S. Mail to the parties on the attached listing this 5th day of March, 2021.

KELLEY, FULTON & KAPLAN, P.L.
Attorney for Creditor Wells Fargo Bank, N.A.
1665 Palm Beach Lakes Blvd
The Forum - Suite 1000
West Palm Beach, FL 33401
Tel. No. (561) 491-1200
Fax No. (561) 684-3773

By:/s/ Craig I. Kelley
       Craig I. Kelley
       Florida Bar No.: 782203

**Mailing Information for Case 20-19106-SMG**

**Electronic Mail Notice List**

The following is the list of **<u>parties</u>** who are currently on the list to receive email notice/service for this case.

- **Scott Andron**    sandron@broward.org, swulfekuhle@broward.org

- **Craig I Kelley**    craig@kelleylawoffice.com,
  tina@kelleylawoffice.com;cassandra@kelleylawoffice.com;kristina@kelleylawoffice.com;debbie@kelleylawoffice.com;dana@kelleylawoffice.com

- **Linda Marie Leali**    trustee@lealilaw.com,
  F005@ecfcbis.com;lkennedy@lealilaw.com

- **Brian K. McMahon**    briankmcmahon@gmail.com, irizarryelise1@gmail.com

- **Office of the US Trustee**    USTPRegion21.MM.ECF@usdoj.gov

- **Jay Sakalo**    jsakalo@bilzin.com, eservice@bilzin.com;lflores@bilzin.com

- **J. Steven Wilkes**    steven.wilkes@usdoj.gov

**Manual Notice List**

The following is the list of **<u>parties</u>** who are **not** on the list to receive email notice/service for this case (who therefore require manual noticing/service). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

> **Kathleen A Daly**
> 515 N Flagler Dr #P300
> West Palm Beach, FL 33401
>
> **George R. Ponczek**
> 7805 Beacon Square Blvd., #201
> Boca Raton, FL 33487
>
> EDDY MANZO-BERDING
> 2108 NE 63 ST
> FT. LAUDERDALE, FL 33308
>
> JENS A. BERDING
> 1881 MIDDLE RIVER DRIVE

APT 406
FT. LAUDERDALE, FL 33305

200196790373400650

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,406,900.00 | 08-29-2016 | 08-29-2026 | [redacted] | | | K1168 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Seven Stars on the Hudson Corp
5300 N. Powerline Rd, Bay 6 & 7
Fort Lauderdale, FL 33309

**Lender:** Wells Fargo Bank, National Association
SBA Lending
301 S. Tryon Street, 27th Floor
Charlotte, NC 28282

**Principal Amount: $1,406,900.00** **Date of Note: August 29, 2016**

NOTE LEGEND. FLORIDA DOCUMENTARY STAMP TAX IN THE AMOUNT OF 4,924.15 HAS BEEN AFFIXED TO THE RECORDED INSTRUMENT PURSUANT TO SECTION 201.08, FLORIDA STATUTE.

PROMISE TO PAY. Seven Stars on the Hudson Corp ("Borrower") promises to pay to Wells Fargo Bank, National Association ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million Four Hundred Six Thousand Nine Hundred & 00/100 Dollars ($1,406,900.00), together with interest on the unpaid principal balance from August 29, 2016, until paid in full.

PAYMENT. Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in accordance with the following payment schedule, which calculates interest on the unpaid principal balances as described in the "INTEREST CALCULATION METHOD" paragraph using the interest rates described in this paragraph: 9 monthly consecutive interest payments, beginning October 15, 2016, with interest calculated on the unpaid principal balances using an interest rate based on the Prime WSJ Rate in effect on the first business day of the month in which SBA received the loan application, plus stated margin (currently 3.500%), plus a margin of 2.500 percentage points, resulting in an initial interest rate of 6.000% per annum; 110 monthly consecutive principal and interest payments in the initial amount of $16,547.55 each, beginning July 15, 2017, with interest calculated on the unpaid principal balances using an interest rate based on the Prime WSJ Rate in effect on the first business day of the month in which SBA received the loan application, plus stated margin (currently 3.500%), plus a margin of 2.500 percentage points, resulting in an initial interest rate of 6.000% per annum; and one principal and interest payment of $16,501.28 on August 29, 2026, with interest calculated on the unpaid principal balances using an interest rate based on the Prime WSJ Rate in effect on the first business day of the month in which SBA received the loan application, plus stated margin (currently 3.500%), plus a margin of 2.500 percentage points, resulting in an initial interest rate of 6.000% per annum. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the Index does not change; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; and then to any late charges. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

VARIABLE INTEREST RATE. The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Prime WSJ Rate in effect on the first business day of the month in which SBA received the loan application, plus stated margin (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each month (the "change period"). The interest rate on this Note will fluctuate. This initial rate is the Prime WSJ Rate in effect on the first business day of the month in which SBA received the loan application, plus stated margin. The initial interest rate must remain in effect until the first change period begins unless reduced in accordance with SOP 50 10.

The "Prime Rate" is the Prime Rate in effect on the first business day of the month (as published in the Wall Street Journal newspaper) in which SBA received the application, or any interest rate change occurs.

Base Rates will be rounded to two decimal places with .004 being rounded down and .005 being rounded up.

Lender will adjust the interest rate on the first calendar day of each change period. The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change.

The margin as identified in the Note may not be changed during the life of the Loan without the written agreement of the Borrower. For variable rate loans, the interest rate adjustment period may not be changed without the written consent of the Borrower.

Lender must adjust the payment amount at least annually as needed to amortize principal over the remaining term of the note.

If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default. If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 3.500% per annum. The interest rate or rates to be applied to the unpaid principal balance during this Note will be the rate or rates set forth herein in the "Payment" section. Notwithstanding any other provision of this Note, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the due date of the last payment in the just-ending payment stream. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

INTEREST CALCULATION METHOD. Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year (366 during leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

PREPAYMENT. Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes

## PROMISSORY NOTE
### (Continued)

Loan No: ███████                                                                                    Page 2

"payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Wells Fargo Bank, National Association, BBOCS Winston Salem Loan Operations Center, 401 N. Research Parkway, 3rd Floor, MAC #D4004-035 Winston Salem, NC 27101-4157.

LATE CHARGE. If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment. This late charge shall be paid to Lender by Borrower to compensate Lender for Lender's extra costs and expenses caused by the late payment.

INTEREST AFTER DEFAULT. Upon default, including failure to pay upon final maturity, the total sum due under this Note will continue to accrue interest at the interest rate under this Note, with the final interest rate described in this Note applying after maturity, or after maturity would have occurred had there been no default. If judgment is entered in connection with this Note, interest will continue to accrue after the date of judgment at the rate in effect at the time judgment is entered. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

DEFAULT. Each of the following shall constitute an event of default ("Event of Default") under this Note:

Payment Default. Borrower fails to make any payment when due under this Note.

Other Defaults. Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

Default in Favor of Third Parties. Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

False Statements. Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

Insolvency. The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

Creditor or Forfeiture Proceedings. Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

Events Affecting Guarantor. Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the Indebtedness evidenced by this Note.

Change in Ownership. Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

Adverse Change. A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

Insecurity. Lender in good faith believes itself insecure.

LENDER'S RIGHTS. Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

ATTORNEYS' FEES; EXPENSES. Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Carolina without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of North Carolina.

COLLATERAL. Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

(A) a Mortgage dated August 29, 2016, to Lender on real property located in Broward County, State of Florida.

(B) Inventory, chattel paper, accounts, equipment, general intangibles and fixtures described in a Commercial Security Agreement dated August 29, 2016.

PAYMENT DUE DATE DEFERRAL. Payment invoices will be sent on a date (the "billing date") which is prior to each payment due date. If this Note is booked near or after the billing date for the first scheduled payment, Lender may, in its sole discretion, defer each scheduled payment date and/or the maturity date by one or more months.

FINANCIAL INFORMATION. All information furnished by Borrower to Lender in connection with the application for credit was true and accurate in every material respect as of the date the information was furnished, and no material facts were omitted so as to make the information incomplete or misleading. There has been no material adverse change to Borrower's financial condition since the date of the most recent submitted statement. Borrower agrees to provide to Lender, upon request, financial statements prepared in a manner and form acceptable to Lender, and copies of such tax returns and other financial information and statements as may be requested by Lender. Financial statements and tax returns submitted to Lender shall be signed and dated by Borrower and any other party preparing such financial statements or tax returns, or otherwise authenticated to Lender's satisfaction. Each financial statement shall give an accurate and complete picture of Borrower's financial condition as of the statement's date, with ownership accurately reflected. Borrower shall also furnish such other information regarding Borrower (and Borrower's general partners or members, if any), Borrower's business operations, the Collateral, and the use of loan proceeds as may be requested by Lender. Borrower warrants that all financial statements and information provided to Lender are and will be accurate, correct and complete. Borrower will permit Lender and Lender's agents and contractors to examine, audit and copy Borrower's books, accounts, records (including electronic records), and computer software programs used to generate the records, including any records in the

## PROMISSORY NOTE
### (Continued)

Loan No: ████████                                                                                   Page 3

possession of a third party, at any reasonable time upon request, and will provide to Lender copies of any records Lender requests, all at no cost to Lender.

**LINE ADVANCES.** Notwithstanding anything to the contrary, requests for advances communicated to any office of Lender by any person believed by Lender in good faith to be authorized to make the request, whether written, verbal, telephonic or electronic, may be acted upon by Lender, and Borrower will be liable for sums advanced by Lender pursuant to such request. Such requests for advances shall be deemed authorized by Borrower, and Lender shall not be liable for such advances made in good faith, and with respect to advances deposited to the credit of any deposit account of Borrower, such advances, when so deposited, shall be conclusively presumed to have been made to or for the benefit of Borrower regardless of the fact that persons other than those authorized to request advances may have authority to draw against such account.

Lender may in its discretion allow Borrower to request and receive advances even if applicable loan conditions are not satisfied, and/or the advance results in violation of loan agreements or covenants, and even though the advance may cause the principal balance to exceed the maximum principal amount of the Note. In such cases, Lender shall not be deemed to have waived such loan conditions, requirements or covenants, and Lender may strictly enforce all such loan conditions, requirements and covenants at any time in its discretion. If at any time the outstanding balance of the Note should exceed the maximum principal amount available to Borrower under the Note, then Lender may require Borrower to immediately make a payment in an amount sufficient to reduce the principal balance to an amount which does not exceed said maximum principal amount.

Borrower agrees to indemnify and hold Lender harmless from and against all damages, liabilities, costs and expenses (including attorney's fees) arising out of any claim by Borrower or any third party against Lender in connection with Lender's performance of advances as described above.

**CREDIT BUREAU INQUIRIES.** The parties hereto, and each individual signing below in a representative capacity, agree that Lender may obtain business and/or personal credit reports and tax returns on each of them in their individual capacities.

**FURTHER ASSURANCES.** The undersigned agrees to (i) do all things deemed necessary by Lender in order to fully document the loan evidenced by the Note and any related agreements, and will fully cooperate concerning the execution and delivery of security agreements, stock powers, instructions and/or other documents pertaining to any collateral intended to secure the indebtedness, (ii) assist in the cure of any defects in the execution, delivery or substance of the Note and related agreements, and in the creation and perfection of any liens, security interests or other collateral rights securing the Note, and (iii) pay Lender immediately upon demand the full amount of all charges, costs and expenses (to include fees paid to third parties) expended or incurred by Lender to monitor Lender's interest in any real or personal property pledged as collateral for the Note, including without limitation all costs of appraisals.

**CONSENT TO SELL LOAN.** The parties hereto agree: (a) Lender may sell or transfer all or part of this loan to one or more purchasers, whether related or unrelated to Lender, without notice and without the consent of the parties; (b) Lender may provide to any purchaser, or potential purchaser, any information or knowledge Lender may have about the parties or about any other matter relating to this loan obligation, without notice, and the parties waive any rights to privacy it may have with respect to such matters; (c) the purchaser of a loan will be considered its absolute owner and will have all the rights granted under the loan documents or agreements governing the sale of the loan; (d) the purchaser of a loan may enforce its interests irrespective of any claims or defenses that the parties may have against Lender; and (e) to waive all notices of sale of the loan, as well as all notices of any repurchase, and all rights of offset or counterclaim that the parties have now or later against Lender or against any purchaser of the loan.

**FACSIMILE AND COUNTERPART.** This document may be signed in any number of separate copies, each of which shall be effective as an original, but all of which taken together shall constitute a single document. An electronic transmission or other facsimile of this document or any related document shall be deemed an original and shall be admissible as evidence of the document and the signer's execution.

**DOCUMENT DELIVERY AND ELECTRONIC TRANSMISSION OF DOCUMENTS.** Each party or person signing this agreement (referred to in this paragraph as "you") agrees that Lender may, in its sole discretion, rely upon any document, report, financial statement, tax return, agreement or other communication ("Document") physically delivered to Lender by mail, hand delivery or delivery service which Lender in good faith believed was sent by you or any of your representatives or employees. Similarly, Lender may, in its sole discretion, rely upon any Document sent by email, facsimile or other electronic means to Lender which Lender in good faith believed was sent by you or any of your representatives or employees. Lender may treat the Document as genuine and authorized to the same extent as if it was an original document validly executed or authenticated as genuine by you. Lender may from time to time in its sole discretion reject any such Document and require a signed original, or require you to provide acceptable authentication of any such Document before accepting or relying on same. You understand and acknowledge that there is a risk that Documents sent by electronic means may be viewed or received by unauthorized persons, and you agree that by sending Documents by electronic means, you shall be deemed to have accepted this risk and the consequences of any such unauthorized disclosure.

**CREDIT FACILITY EXTENSION NOTICE.** Lender may, at Lender's discretion, extend this Credit by written notice to Borrower. Such extension will be effective as of the final payment date of this Note, and may be conditioned among other things on payment of a fee for such extension. Borrower will be deemed to have accepted the terms of such extensions if Borrower does not deliver to Lender written rejection of such extension within 10 days following the date of the written notice of extension, or if Borrower draws additional funds following receipt of such extension notice. After any extension of this Note in this manner, the final payment date and any reference to maturity in this Letter will mean the new final payment date set forth in the extension notice. The Note may be modified and extended repeatedly in this manner.

**COMMUNITY AND OTHER PROPERTY.** In addition to the rights of Lender under any applicable community property laws, Borrower, Guarantor or Grantor who is a Married Person and who has an interest in marital or community property under applicable law acknowledges and agrees that his/her obligation as a Borrower, Guarantor or Grantor is incurred in the interest of and to benefit the marital community (or domestic partnership, if applicable), and expressly agrees that recourse may be had against his or her separate property and his or her rights in community property and community assets for all of his or her obligations to Lender. In addition to any other property that may be subject to rights of Lender, Borrower and Guarantor also agree not to, without Lender's prior written consent, enter into any community property agreement which alters the separate or community property character of any of such party's property. For the purpose of this provision, "Married Person" means a person in a spousal relationship and shall include parties to a duly registered and/or legally recognized same-sex civil union, domestic partnership, and other terms, whether or not gender-specific in a spousal relationship, that denote spousal relationship, as those terms are used throughout the laws, codes and regulations of states and/or jurisdictions that recognize legally married same-sex couples, civil unions and/or domestic partnerships, and any references herein to a married person or marital status shall be deemed to also include the applicable corresponding term, or other reference relating to a party to a civil union or domestic partnership. With respect to the Guaranty only, to the extent this provision may conflict with another provision contained in the Guaranty, that other provision of the Guaranty shall control.

**SECURITY INTEREST AND RIGHT OF SETOFF.** In addition to all liens upon and rights of setoff arising by law, Borrower pledges and grants to Lender as security for Borrower's indebtedness and obligations under the Note (excluding any consumer obligations subject to the Federal Truth in Lending Act) a security interest and lien upon all monies, securities, securities accounts, brokerage accounts, deposit accounts and other property of Borrower now or hereafter in the possession of or on deposit with Lender or any Wells Fargo affiliate, whether held in a general or special account or for safekeeping or otherwise, excluding however all IRA and Keogh accounts. No security interest, lien or right of setoff will be deemed to have been waived by any act or conduct on the part of Lender, or by any neglect to exercise such right, or by any delay in so

## PROMISSORY NOTE
### (Continued)

Loan No: ███████████                                                    Page 4

doing, and every right of setoff, lien and security interest will continue in full force and effect until specifically waived or released by Lender in writing.

**LOAN FEE AUTHORIZATION.** Borrower shall pay to Lender any and all fees as specified in the "Disbursement Request and Authorization" executed by Borrower in connection with this Note. Such fees are non-refundable and shall be due and payable in full immediately upon Borrower's execution of this Note.

**ADDITIONAL EVENTS OF DEFAULT.** In addition to the Events of Default described herein, the following shall be an Event of Default if applicable: (i) Borrower, any Guarantor or any grantor of collateral securing the Note fails to comply with any terms or conditions of any agreement with Lender or any Wells Fargo Affiliate; (ii) Borrower or any Guarantor revokes or disputes the validity of any of its liabilities or obligations under any Note, related agreement, or any other agreement with Lender or any Wells Fargo Affiliate; (iii) any change in ownership of an aggregate of twenty-five percent (25%) or more of the common stock, members' equity or other ownership interest in Borrower or any general partner of Borrower or any Guarantor, (iv) the withdrawal, resignation or expulsion of any one or more of the general partners in Borrower or any Guarantor with an aggregate ownership interest in Borrower or such Guarantor of twenty-five percent (25%) or more; or (v) Borrower or any Guarantor or any chairman, CEO, CFO, president, manager or general partner of Borrower or any Guarantor, nor any officer, member, or shareholder with an ownership interest of 25% or more of Borrower or any Guarantor, has been or is convicted of a felony. For purposes of this provision Wells Fargo Affiliate shall mean Wells Fargo & Company and any present or future subsidiary of Wells Fargo & Company.

**EXECUTION OF DOCUMENTS, CONSULTATION WITH COUNSEL.** Each party hereto acknowledges and agrees that he/she/it has had an opportunity to review and consider the terms and provisions of this agreement and each related loan document, to consult with counsel of his/her/its choice, if desired, and to suggest changes to the structure and terms of the agreements. Each party hereto warrants and agrees that his/her/its execution of this agreement and any related loan documents is made voluntarily and with full knowledge of the significance and effect of such agreements.

**ARBITRATION AGREEMENT. Arbitration - Binding Arbitration.** Lender and each party to this agreement hereby agree, upon demand by any party, to submit any Dispute to binding arbitration in accordance with the terms of this Arbitration Program. Arbitration may be demanded before the institution of a judicial proceeding, or during a judicial proceeding, but not more than 60 days after service of a complaint, third party complaint, cross-claim, or any answer thereto, or any amendment to any of such pleadings. A "Dispute" shall include any dispute, claim or controversy of any kind, whether in contract or in tort, legal or equitable, now existing or hereafter arising, relating in any way to any aspect of this agreement, any related note, instrument or agreement incorporating this Arbitration Program (the "Documents"), or any renewal, extension, modification or refinancing of any indebtedness or obligation relating thereto, including without limitation, their negotiation, execution, collateralization, administration, repayment, modification, extension, substitution, formation, inducement, enforcement, default or termination, or any request for additional credit. This provision is a material inducement for the parties entering into the transactions relating to this Agreement. In the event of a court ordered arbitration, the party requesting arbitration shall be responsible for timely filing the demand for arbitration and paying the appropriate filing fee within 30 days of an abatement order or the time specified by the court; the party's failure to do so shall result in that party's right to demand arbitration being automatically terminated with respect to such Dispute. DISPUTES SUBMITTED TO ARBITRATION ARE NOT RESOLVED IN COURT BY A JUDGE OR JURY. TO THE EXTENT ALLOWED BY APPLICABLE LAW, THE PARTIES IRREVOCABLY AND VOLUNTARILY WAIVE ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY DISPUTE ARBITRATED PURSUANT TO THIS ARBITRATION PROGRAM.

**A. Governing Rules.** Any arbitration proceeding will (i) be governed by the Federal Arbitration Act (Title 9 of the United States Code), notwithstanding any conflicting choice of law provision in any of the documents between the parties; and (ii) be conducted by the American Arbitration Association ("AAA"), or such other administrator as the parties shall mutually agree upon, in accordance with the AAA's commercial dispute resolution procedures, unless the claim or counterclaim is at least $1,000,000.00 exclusive of claimed interest, arbitration fees and costs, in which case the arbitration shall be conducted in accordance with the AAA's optional procedures for large, complex commercial disputes (the commercial dispute resolution procedures or the optional procedures for large, complex commercial disputes are referred to herein, as applicable, as the "Rules"). If there is any inconsistency between the terms hereof and the Rules, the terms and procedures set forth herein shall control. Arbitration proceedings hereunder shall be conducted at a location mutually agreeable to the parties, or if they cannot agree, then at a location selected by the AAA in the state of the applicable substantive law primarily governing the Note. Any party who fails or refuses to submit to arbitration following a demand by any other party shall bear all costs and expenses incurred by such other party in compelling arbitration of any Dispute. The arbitrator shall award all costs and expenses of the arbitration proceeding.

**B. No Waiver of Provisional Remedies, Self-Help and Foreclosure.** The arbitration requirement does not limit the right of any party to (i) foreclose against real or personal property collateral; (ii) exercise self-help remedies relating to collateral or proceeds of collateral such as setoff or repossession; or (iii) obtain provisional or ancillary remedies such as replevin, injunctive relief, attachment or the appointment of a receiver, before during or after the pendency of any arbitration proceeding. This exclusion does not constitute a waiver of the right or obligation of any party to submit any Dispute to arbitration or reference hereunder, including those arising from the exercise of the actions detailed in sections (i), (ii) and (iii) of this paragraph.

**C. Arbitrator Qualifications and Powers.** Any arbitration proceeding in which the amount in controversy is $5,000,000.00 or less will be decided by a single arbitrator selected according to the Rules, and who shall not render an award of greater than $5,000,000.00. Any Dispute in which the amount in controversy exceeds $5,000,000.00 shall be decided by majority vote of a panel of three arbitrators; provided however, that all three arbitrators must actively participate in all hearings and deliberations. Every arbitrator shall be a neutral practicing attorney or a retired member of the state or federal judiciary, in either case with a minimum of ten years experience in the substantive law applicable to the subject matter of the Dispute. The arbitrator will determine whether or not an issue is arbitrable and will give effect to the statutes of limitation in determining any claim. In any arbitration proceeding the arbitrator will decide (by documents only or with a hearing at the arbitrator's discretion) any pre-hearing motions which are similar to motions to dismiss for failure to state a claim or motions for summary adjudication. The arbitrator shall resolve all Disputes in accordance with the applicable substantive law and may grant any remedy or relief that a court of such state could order or grant within the scope hereof and such ancillary relief as is necessary to make effective any award. The arbitrator shall also have the power to award recovery of all costs and fees, to impose sanctions and to take such other action as the arbitrator deems necessary to the same extent a judge could pursuant to the Federal Rules of Civil Procedure, the applicable state rules of civil procedure, or other applicable law. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. The institution and maintenance of an action for judicial relief or pursuit of a provisional or ancillary remedy shall not constitute a waiver of the right of any party, including the plaintiff, to submit the controversy or claim to arbitration if any other party contests such action for judicial relief.

**D. Discovery.** In any arbitration proceeding discovery will be permitted in accordance with the Rules. All discovery shall be expressly limited to matters directly relevant to the Dispute being arbitrated and must be completed no later than 20 days before the hearing date. Any requests for an extension of the discovery periods, or any discovery disputes, will be subject to final determination by the arbitrator upon a showing that the request for discovery is essential for the party's presentation and that no alternative means for obtaining information is available.

**E. Class Proceedings and Consolidations.** No party hereto shall be entitled to join or consolidate disputes by or against others in any arbitration, or to include in any arbitration any dispute as a representative or member of a class, or to act in any arbitration in the interest of the general

## PROMISSORY NOTE
**(Continued)**

Loan No: [REDACTED]                                                                 Page 5

public or in a private attorney general capacity.

**F. Small Claims Court.** Any party may require that a Dispute be resolved in Small Claims Court if the Dispute and related claims are fully within that court's jurisdiction.

**G. Real Property Collateral.** Notwithstanding anything herein to the contrary, no Dispute shall be submitted to arbitration if the Dispute concerns indebtedness secured directly or indirectly, in whole or in part, by any real property and the Dispute is governed by the laws of California, Connecticut, Idaho, Kansas, Montana, Nevada, South Dakota, Virginia or Utah, unless any conditions for arbitration that may be set forth in the mortgage or deed of trust are satisfied; if any such Disputes are not referred to arbitration, then any provision in such mortgage or deed of trust providing for referral of Disputes to a referee or master under the laws of California, Connecticut, Idaho, Kansas, Montana, Nevada, South Dakota, Virginia or Utah shall be applicable to such Disputes.

**H. State Specific Provisions:**

If Delaware, Pennsylvania or Virginia law governs the Dispute, the following provision is applicable if there is a Confession of Judgment in any note, guaranty or other Documents subject to this Arbitration Program: Confession of Judgment. Notwithstanding anything herein to the contrary, the arbitration requirement does not limit or preclude the right of Lender to confess judgment pursuant to a warrant of attorney provision set forth in any note, guaranty or other Documents. No party shall have the right to demand binding arbitration of any claim, dispute or controversy seeking to (i) strike-off or open a judgment obtained by confession pursuant to a warrant of attorney contained in any note, guaranty or other Documents, or (ii) challenge the waiver of a right to prior notice and a hearing before judgment is entered, or after judgment is entered, but before execution upon the judgment. Any claims, disputes or controversies challenging the confession of judgment shall be commenced and prosecuted in accordance with the procedures set forth, and in the forum specified by the applicable state rules of civil procedure or other applicable law.

If Maryland law governs the Dispute, the following provision is applicable if there is a Confession of Judgment in any note, guaranty or other Documents subject to this Arbitration Program: Confession of Judgment. Notwithstanding anything herein to the contrary, the arbitration requirement does not limit or preclude the right of Lender to confess judgment, and no party shall have the right to demand binding arbitration of any claim, dispute or controversy seeking to open a judgment obtained by confession. Nothing herein, including the arbitration requirement, shall limit the right of any party to foreclose judicially or non-judicially against any real or personal property collateral, or exercise judicial or non-judicial power of sale rights. No provision regarding submission to a jurisdiction and/or venue in any court or the waiver of any right to trial by jury is intended or shall be construed to be in derogation of the provisions for arbitration of any dispute. Any claim or counterclaim or defense raised in connection with Lender's exercise of any rights set forth in any note, guaranty or other Documents subject to this Arbitration Program shall be subject to the arbitration requirement.

If South Carolina law governs the Dispute, the following provision is included: WAIVER OF JURY TRIAL. NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, WITHOUT INTENDING IN ANY WAY TO LIMIT THE PARTIES' AGREEMENT TO ARBITRATE ANY DISPUTE AS SET FORTH IN THIS AGREEMENT, TO THE EXTENT ANY DISPUTE IS NOT SUBMITTED TO ARBITRATION OR IS DEEMED BY THE ARBITRATOR OR BY ANY COURT WITH JURISDICTION TO BE NOT ARBITRABLE OR NOT REQUIRED TO BE ARBITRATED, LENDER AND EACH PARTY TO THIS AGREEMENT WAIVE TRIAL BY JURY IN RESPECT OF ANY SUCH DISPUTE AND ANY ACTION ON SUCH DISPUTE. THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY LENDER AND EACH PARTY, AND LENDER AND EACH PARTY HEREBY REPRESENT THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY PERSON OR ENTITY TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE PARTIES ENTERING INTO THE LOAN DOCUMENTS. LENDER AND EACH PARTY TO THIS AGREEMENT ARE EACH HEREBY AUTHORIZED TO FILE A COPY OF THIS SECTION IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER OF JURY TRIAL. EACH PARTY FURTHER REPRESENTS AND WARRANTS THAT IT HAS BEEN REPRESENTED IN THE SIGNING OF THIS AGREEMENT AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY INDEPENDENT LEGAL COUNSEL SELECTED OF ITS OWN FREE WILL, AND THAT IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL.

**I. Miscellaneous.** To the maximum extent practicable, the AAA, the arbitrators and the parties shall take all action required to conclude any arbitration proceeding within 180 days of the filing of the Dispute with the AAA. No arbitrator or other party to an arbitration proceeding may disclose the existence, content or results thereof, except for disclosures of information by a party required in the ordinary course of its business or by applicable law or regulation. If more than one agreement for arbitration by or between the parties potentially applies to a Dispute, the arbitration provision most directly related to the documents between the parties or the subject matter of the Dispute shall control. This arbitration provision shall survive the repayment of the Note and the termination, amendment or expiration of any of the Documents or any relationship between the parties.

**SUPPLEMENT TO APPLICATION OF PAYMENT.** Notwithstanding any provision in this Note to the contrary Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal.

**LOAN PREPAYMENT.** Notwithstanding any provision in this Note to the contrary:

Borrower may prepay this Note. Borrower may prepay 20 percent or less of the unpaid principal balance at any time without notice. If Borrower prepays more than 20 percent and the Loan has been sold on the secondary market, Borrower must:

a. Give Lender written notice;

b. Pay all accrued interest; and

c. If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph b., above.

If Borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice.

**SMALL BUSINESS ADMINISTRATION (SBA).** When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

**SBA ARBITRATION.** The parties specifically agree that the provisions of this Arbitration Program are not applicable to any dispute between any party and the U.S. Small Business Administration (the "SBA"), including but not limited to, any dispute with the SBA after purchase of the loan by the SBA.

**NON-REVOLVING LINE OF CREDIT.** This Note evidences a non-revolving line of credit. Principal amounts repaid may not be reborrowed. Once the total amount of principal has been advanced, Borrower is not entitled to further loan advances. Advances under this Note may be requested either orally or in writing by Borrower or an authorized person. Lender may, but need not, require that all oral requests be confirmed in writing. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. Borrower

### PROMISSORY NOTE
### (Continued)

Loan No: ███████                                                                                    Page 6

agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs.

**FINAL PAYMENT.** If a final payment amount is set out in the Payment section of this Note, Borrower understands that it is an estimate, and that the actual final payment amount will depend upon when payments are received and other factors.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

SEVEN STARS ON THE HUDSON CORP

By: _____ (Seal)
    Jens A. Berding, President of Seven Stars on the
    Hudson Corp

---

### Florida Documentary Stamp Tax

Florida documentary stamp tax in the amount required by law has been paid with respect to this Note on the Mortgage securing this Note.

LaserPro, Ver. 18.2.0.015 Copr. CHH USA Corporation 1997, 2018. All Rights Reserved. - NC  C:\LFM\CFI\LF\L\03.FC TR-7253\I PR-003

INSTR # 113904434   Page  1 of 15, Recorded 08/31/2016 at 11:51 AM
Broward County Commission,   Doc M  $4924.15 Int Tax $2813.80 Deputy Clerk
ERECORD

RECORDATION REQUESTED BY:
Wells Fargo Bank, National Association
SBA Lending
301 S. Tryon Street, 27th Floor
Charlotte, NC  28282

WHEN RECORDED MAIL TO:
Wells Fargo Bank, National Association
SBA - BBG Loan Ops - Recorded Docs
P.O. Box 659713
San Antonio, TX  78265-9827

This Mortgage prepared by:

Name:  Rhonda Freeman, Loan Documentation Specialist
Company:  Wells Fargo Bank, National Association
Address:  301 S. Tryon Street, 27th Floor, Charlotte, NC 28282

200198790373400490

## MORTGAGE

THIS MORTGAGE dated August 29, 2016, is made and executed between Jens Berding and Eddy Manzo-Berding, whose address is 2108 NE 63rd St, Fort Lauderdale, FL 33308 (referred to below as "Grantor") and Wells Fargo Bank, National Association, whose address is 301 S. Tryon Street, 27th Floor, Charlotte, NC  28282 (referred to below as "Lender").

GRANT OF MORTGAGE. For valuable consideration, Grantor mortgages to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Broward County, State of Florida:

THIS MORTGAGE SECURES A ADVANCING TERM LINE OF CREDIT. FLORIDA DOCUMENTARY STAMP TAX IN THE AMOUNT OF $4,924.15 AND FLORIDA NON-RECURRING INTANGIBLE TAX IN THE AMOUNT OF $2,813.80 ARE BEING PAID UPON RECORDATION OF THIS INSTRUMENT.A

See Exhibit A attached hereto and made a part hereof.

The Real Property or its address is commonly known as  2108 NE 63rd St, Fort Lauderdale, FL  33308.  The Real Property tax identification number is 49-42-12-08-2540.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property.  In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (A) PAYMENT OF THE INDEBTEDNESS AND  (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THIS MORTGAGE.  THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS ALSO GIVEN TO SECURE ANY AND ALL OF BORROWER'S OBLIGATIONS UNDER THAT CERTAIN CONSTRUCTION LOAN AGREEMENT BETWEEN BORROWER AND LENDER OF EVEN DATE HEREWITH.  ANY EVENT OF DEFAULT UNDER THE CONSTRUCTION LOAN AGREEMENT, OR ANY OF THE RELATED DOCUMENTS REFERRED TO THEREIN, SHALL ALSO BE AN EVENT OF DEFAULT UNDER THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

GRANTOR'S WAIVERS.  Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

GRANTOR'S REPRESENTATIONS AND WARRANTIES.  Grantor warrants that:  (a) this Mortgage is executed at Borrower's request and not at the request of Lender;  (b) Grantor has the full power, right, and authority to enter into this Mortgage and to hypothecate the

EXHIBIT "B"

## MORTGAGE
### (Continued)

**Loan No:** ▮▮▮▮▮▮▮                                                    **Page 2**

Property; (c) the provisions of this Mortgage do not conflict with, or result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or order applicable to Grantor; (d) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower).

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Borrower shall pay to Lender all Indebtedness secured by this Mortgage as it becomes due, and Borrower and Grantor shall strictly perform all Borrower's and Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Borrower and Grantor agree that Borrower's and Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Subsequent Liens.** Grantor shall not allow any subsequent liens or mortgages on all or any portion of the Property without the prior written consent of Lender.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract

# MORTGAGE
**Loan No:** ▮▮▮▮▮▮

## (Continued)

Page 3

for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Florida law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for the Existing Indebtedness referred to in this Mortgage or those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Mortgage, to the extent compliance with the terms of this Mortgage would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Mortgage for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to

## MORTGAGE
**Loan No:** ████████
(Continued)
Page 4

comply with any obligation to maintain Existing Indebtedness in good standing as required below, or to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will  (A)  be payable on demand;  (B)  be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either  (1)  the term of any applicable insurance policy; or  (2)  the remaining term of the Note; or  (C)  be treated as a balloon payment which will be due and payable at the Note's maturity.  The Mortgage also will secure payment of these amounts.  Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.**  The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.**  Grantor warrants that:  (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and  (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.**  Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons.  In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense.  Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.**  Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.**  All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**EXISTING INDEBTEDNESS.**  The following provisions concerning Existing Indebtedness are a part of this Mortgage:

**Existing Lien.**  The lien of this Mortgage securing the Indebtedness may be secondary and inferior to an existing lien.  Grantor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

**No Modification.**  Grantor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Mortgage by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender.  Grantor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.**  The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.**  If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award.  Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.**  If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property.  The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.**  The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.**  Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property.  Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all intangible personal property taxes, documentary stamp taxes, fees, and other charges for recording or registering this Mortgage.

**Taxes.**  The following shall constitute taxes to which this section applies:  (1)  a specific tax, including without limitation an intangible personal property tax, upon this type of Mortgage or upon all or any part of the  Indebtedness secured by this Mortgage;  (2)  a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage;  (3)  a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and  (4)  a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.**  If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have

**MORTGAGE**
**(Continued)**

Loan No: [REDACTED]                                                      Page 5

---

the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-In-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

\ **PARTIAL RELEASES.** Lender shall execute partial releases of the lien of this Mortgage upon the following conditions: Wells Fargo does not allow partial releases without prior credit approval.

**FULL PERFORMANCE.** If Borrower and Grantor pay all the Indebtedness when due, and Grantor otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**Default in Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's ability to repay the Indebtedness or Borrower's or Grantor's ability to perform their respective obligations under this Mortgage or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution or termination of Borrower's or Grantor's existence as a going business, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.



**MORTGAGE**
**(Continued)**

Loan No:                                                                                                      Page 6

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Existing Indebtedness.** The payment of any installment of principal or any interest on the Existing Indebtedness is not made within the time required by the promissory note evidencing such indebtedness, or a default occurs under the instrument securing such indebtedness and is not cured during any applicable grace period in such instrument, or any suit or other action is commenced to foreclose any existing lien on the Property.

**Breach of Other Agreement.** Any breach by Borrower or Grantor under the terms of any other agreement between Borrower or Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower or Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Borrower or Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that Borrower would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender personally, or by Lender's agents or attorneys, may enter into and upon all or any part of the Property, and may exclude Grantor, Grantor's agents and servants wholly from the Property. Lender may use, operate, manage and control the Property. Lender shall be entitled to collect and receive all earnings, revenues, rents, issues, profits and income of the Property and every part thereof, all of which shall for all purposes constitute property of Grantor. After deducting the expenses of conducting the business thereof, and of all maintenance, repairs, renewals, replacements, alterations, additions, betterments and improvements and amounts necessary to pay for taxes, assessments, insurance and prior or other property charges upon the Property or any part thereof, as well as just and reasonable compensation for the services of Lender. Lender shall apply such monies first to the payment of the principal of the Note, and the interest thereon, when and as the same shall become payable and second to the payment of any other sums required to be paid by Grantor under this Mortgage.

**Appoint Receiver.** In the event of a suit being instituted to foreclose this Mortgage, Lender shall be entitled to apply at any time pending such foreclosure suit to the court having jurisdiction thereof for the appointment of a receiver of any or all of the Property, and of all rents, incomes, profits, issues and revenues thereof, from whatsoever source. The parties agree that the court shall forthwith appoint such receiver with the usual powers and duties of receivers in like cases. Such appointment shall be made by the court as a matter of strict right to Lender and without notice to Grantor, and without reference to the adequacy or inadequacy of the value of the Property, or to Grantor's solvency or any other party defendant to such suit. Grantor hereby specifically waives the right to object to the appointment of a receiver and agrees that such appointment shall be made as an admitted equity and as a matter of absolute right to Lender, and consents to the appointment of any officer or employee of Lender as receiver. Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Borrower or Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Borrower and Grantor hereby waive any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the



## MORTGAGE
### (Continued)

**Loan No:** [REDACTED]

time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or Borrower and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**CONSENT TO SELL LOAN.** The parties hereto agree: (a) Lender may sell or transfer all or part of this loan to one or more purchasers, whether related or unrelated to Lender, without notice and without the consent of the parties; (b) Lender may provide to any purchaser, or potential purchaser, any information or knowledge Lender may have about the parties or about any other matter relating to this loan obligation, without notice, and the parties waive any rights to privacy it may have with respect to such matters; (c) the purchaser of a loan will be considered its absolute owner and will have all the rights granted under the loan documents or agreements governing the sale of the loan; (d) the purchaser of a loan may enforce its interests irrespective of any claims or defenses that the parties may have against Lender; and (e) to waive all notices of sale of the loan, as well as all notices of any repurchase, and all rights of offset or counterclaim that the parties have now or later against Lender or against any purchaser of the loan.

**FACSIMILE AND COUNTERPART.** This document may be signed in any number of separate copies, each of which shall be effective as an original, but all of which taken together shall constitute a single document. An electronic transmission or other facsimile of this document or any related document shall be deemed an original and shall be admissible as evidence of the document and the signer's execution.

**COMMUNITY AND OTHER PROPERTY.** In addition to the rights of Lender under any applicable community property laws, Borrower, Guarantor or Grantor who is a Married Person and who has an interest in marital or community property under applicable law acknowledges and agrees that his/her obligation as a Borrower, Guarantor or Grantor is incurred in the interest of and to benefit the marital community (or domestic partnership, if applicable), and expressly agrees that recourse may be had against his or her separate property and his or her rights in community property and community assets for all of his or her obligations to Lender, in addition to any other property that may be subject to rights of Lender. Borrower and Guarantor also agree not to, without Lender's prior written consent, enter into any community property agreement which alters the separate or community property character of any of such party's property. For the purpose of this provision, "Married Person" means a person in a spousal relationship and shall include parties to a duly registered and/or legally recognized same-sex civil union, domestic partnership, and other terms, whether or not gender-specific in a spousal relationship, that denote spousal relationship, as those terms are used throughout the laws, codes and regulations of states and/or jurisdictions that recognize legally married same-sex couples, civil unions and/or domestic partnerships, and any references herein to a married person or marital status shall be deemed to also include the applicable corresponding term, or other reference relating to a party to a civil union or domestic partnership. With respect to the Guaranty only, to the extent this provision may conflict with another provision contained in the Guaranty, that other provision of the Guaranty shall control.

**EXECUTION OF DOCUMENTS, CONSULTATION WITH COUNSEL.** Each party hereto acknowledges and agrees that he/she/it has had an opportunity to review and consider the terms and provisions of this agreement and each related loan document, to consult with counsel of his/her/its choice, if desired, and to suggest changes to the structure and terms of the agreements. Each party hereto warrants and agrees that his/her/its execution of this agreement and any related loan documents is made voluntarily and with full knowledge of the significance and effect of such agreements.

**DEFINITIONS OF INDEBTEDNESS AND PERSONAL PROPERTY.** The definition of "Indebtedness" herein includes, without limitation, all liability of Borrower or other party having its obligations to Lender secured by this Mortgage, whether liquidated or unliquidated, defined, contingent, conditional or of any other nature whatsoever, and performance of all other obligations, arising under any swap, derivative, foreign exchange or hedge transaction or arrangement (or other similar transaction or arrangement howsoever described or defined) at any time entered into with Lender in connection with the Note. Notwithstanding anything to the contrary herein, the definition of "Personal Property" as used in this Mortgage is subject to the following limitation: If at any time the Real Property is located in an area designated

## MORTGAGE
**(Continued)**

**Loan No:** ▮▮▮▮▮▮                                                                                      **Page 8**

by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, then while it is subject to that designation, the term "Personal Property" shall be limited to only those items specifically covered by Coverage A of the standard flood insurance policy issued in accordance with the National Flood Insurance Program or under equivalent coverage similarly issued by a private insurer to satisfy the National Flood Insurance Act (as amended). This limitation may also be present in the definition of Personal Property set forth in the definitions section of this Mortgage. This limitation is applicable only within the context of this Mortgage; this limitation does not limit or modify any collateral description contained in a separate security agreement or other collateral document granting to Lender rights or security interests in personal property.

**ENCUMBRANCES.** Grantor/Mortgagor/Trustor shall not, without Lender's consent, mortgage, assign, grant a lien upon or security interest in, or otherwise encumber the Property or any interest in the Property, or allow such a lien or security interest to exist or arise, whether voluntarily, involuntarily or by operation of law, except for liens and security interests in favor of Lender, or property taxes attributable to the Property which are not past due.

**APPRAISALS, FEES AND EXPENSES.** Grantor agrees that Lender may obtain appraisals and reappraisals and perform property evaluations and appraisal reviews of the Real Property when required by the regulations of the Federal Reserve Board or the Office of the Comptroller of the Currency, or any other regulatory agency, or at such other times as Lender may reasonably require. Appraisals shall be performed by an independent third party appraiser selected by Lender; property evaluations and appraisal reviews may be performed by third party appraisers or appraisers and staff of Lender. The fees, expenses and other cost of such appraisals, reappraisals, property evaluations and appraisal reviews shall be paid by Grantor. In addition, Grantor shall be responsible for payment of all fees and expenses of Lender and third parties relating to inspecting the Real Property, environmental review, title policies and endorsements (or title searches, abstracts of title or legal opinions of title where applicable), and monitoring the payment of property taxes, and any governmental taxes, fees and recording costs relating to this mortgage.

**LEASES AND RENTS.** Grantor/Trustor/Mortgagor presently assigns to Lender all of Grantor/Trustor/Mortgagor's right, title and interest in and to all present and future leases of the Property and all rents from the Property. This Assignment of Rents is given to secure (A) Payment of the Indebtedness and (B) Performance of any and all obligations under the Note and Mortgage/Deed of Trust. Grantor/Trustor/Mortgagor's present assignment to Lender hereunder is of all present and future leases includes all leases, licenses, rental agreements and other agreements of any kind relating to the use or occupancy of any of the Property, together with all guarantees of and security for any tenant's performance, and all extensions, renewals and modifications thereto (as used in this paragraph, each, a "Lease" and collectively, the "Leases"), together with any and all Rents from the Property. This assignment shall not impose upon Lender any duty to produce Leases, nor cause Lender to be a "mortgagee in possession," or responsible for performing any of the obligations of the lessor under any Lease. Lender confers upon Grantor/Trustor/Mortgagor a license to collect and retain the Rents as they come due, until the occurrence of any Event of Default, at which time the license shall be automatically revoked, and Lender, or its designated agent may, at its option and without notice, make, cancel, enforce or modify any Lease or Rents, collect Rents and do any acts which Lender deems proper to protect the security hereof or exercise any other right or remedy hereunder. Grantor/Trustor/Mortgagor represents and warrants that there exists no material default under present Leases and that those Leases are in full force and effect. Lender at its option and without notice, may notify any tenant of this assignment of Leases and Rents. Grantor/Trustor/Mortgagor agrees, at its expense, (i) to comply with and enforce all the terms and conditions under each Lease, and defend in any action in connection with any Lease; (ii) not to modify any Lease in any material respect, nor accept surrender under or terminate the term of any Lease, nor waive or release any tenant under any Lease; (iii) not to anticipate the Rents under any Lease; and (iv) to give prompt notice to Lender of any default by any tenant under any Lease, and of any notice of default on the part of Grantor/Trustor/Mortgagor under any Lease received from a tenant. Should Grantor/Trustor/Mortgagor fail to do any act required to be done by Grantor/Trustor/Mortgagor hereunder, then Lender, at its option and without notice, may make or do the same in such manner and to such extent as Lender deems necessary to protect the security hereof. Grantor/Trustor/Mortgagor agrees to pay to Lender immediately upon demand all sums expended under the authority hereof, including reasonable attorneys' fees, together with interest thereon at the highest rate per annum payable under any Indebtedness, and the same, at Lender's option, may be added to the Indebtedness and secured hereby.

**ASSOCIATION OF UNIT OWNERS.** The following provisions apply if the Real Property has been submitted to unit ownership law or similar law for the establishment of condominiums or cooperative ownership of the Real Property:

**A. Power of Attorney.** Grantor grants an irrevocable power of attorney to Lender to vote in Lender's discretion on any matter that may come before the association of unit owners. Lender shall have the right to exercise this power of attorney only after Grantor's default; however, Lender may decline to exercise this power as Lender sees fit.

**B. Insurance.** The insurance as required herein, may be carried by the association of unit owners on Grantor's behalf, and the proceeds of such insurance may be paid to the association of unit owners for the purpose of repairing or reconstructing the Property. If not so used by the association, such proceeds shall be paid to Lender.

**C. Default.** Grantor's failure to perform any of the obligations imposed on Grantor by the declaration submitting the Real Property to unit ownership, by the bylaws of the association of unit owners, or by any rules or regulations thereunder, shall be an event of default under this Mortgage. If Grantor's interest in the Real Property is a leasehold interest and such property has been submitted to unit ownership, any failure by Grantor to perform any of the obligations imposed on Grantor by the lease of the Real Property from its owner, any default under such lease which might result in termination of the lease as it pertains to the Real Property, or any failure of Grantor as a member of an association of unit owners to take any reasonable action within Grantor's power to prevent a default under such lease by the association of unit owners or by any member of the association shall be an Event of Default under this Mortgage.

**FAILURE TO PROVIDE INSURANCE.** Grantor/Trustor/Mortgagor ("Owner") acknowledges and agrees that if Owner fails to provide any required insurance on the terms set forth herein or in any Related Documents, or fails to continue such insurance in force in compliance with the requirements of this agreement or any Related Documents, Lender may purchase insurance at Owner's expense as provided therein. Such insurance may protect Lender's interests, and may otherwise protect none of, or less than all of, Owner's interests. The cost of any such insurance shall become a part of the Indebtedness and shall be payable on demand or added to the Note as provided

**MORTGAGE**
**(Continued)**

Loan No: ▮▮▮▮▮▮▮                                                     Page 9

herein, at Lender's option. OWNER ACKNOWLEDGES THAT IF LENDER SO PURCHASES ANY SUCH INSURANCE, THE INSURANCE MAY PROVIDE LIMITED PROTECTION AGAINST PHYSICAL DAMAGE TO THE COLLATERAL, UP TO THE BALANCE OF THE LOAN; HOWEVER, OWNER'S EQUITY IN THE COLLATERAL MAY NOT BE INSURED. IN ADDITION, THE INSURANCE MAY NOT PROVIDE ANY PUBLIC LIABILITY OR PROPERTY DAMAGE INDEMNIFICATION AND MAY NOT MEET THE REQUIREMENTS OF ANY FINANCIAL RESPONSIBILITY LAWS.

**LENDER TO BE NAMED LOSS PAYEE.** All required policies and certificates of insurance shall name Mortgagee/Beneficiary as loss payee, and shall provide that the insurance cannot be terminated as to Mortgagee/Beneficiary except upon a minimum of ten (10) days' prior written notice to Lender/Mortgagee/Beneficiary. Immediately upon any request by Lender/Mortgagee/Beneficiary, Grantor/Trustor/Mortgagor shall deliver to Lender/Mortgagee/Beneficiary the original of all such policies or certificates, with receipts evidencing annual prepayment of the premiums.

**ARBITRATION AGREEMENT. Arbitration - Binding Arbitration.** Lender and each party to this agreement hereby agree, upon demand by any party, to submit any Dispute to binding arbitration in accordance with the terms of this Arbitration Program. Arbitration may be demanded before the institution of a judicial proceeding, or during a judicial proceeding, but not more than 60 days after service of a complaint, third party complaint, cross-claim, or any answer thereto, or any amendment to any of such pleadings. A "Dispute" shall include any dispute, claim or controversy of any kind, whether in contract or in tort, legal or equitable, now existing or hereafter arising, relating in any way to any aspect of this agreement, or any related note, instrument or agreement incorporating this Arbitration Program (the "Documents"), or any renewal, extension, modification or refinancing of any indebtedness or obligation relating thereto, including without limitation, their negotiation, execution, collateralization, administration, repayment, modification, extension, substitution, formation, inducement, enforcement, default or termination, or any request for additional credit. This provision is a material inducement for the parties entering into the transactions relating to this Agreement. In the event of a court ordered arbitration, the party requesting arbitration shall be responsible for timely filing the demand for arbitration and paying the appropriate filing fee within 30 days of the abatement order or the time specified by the court; the party's failure to do so shall result in that party's right to demand arbitration being automatically terminated with respect to such Dispute. DISPUTES SUBMITTED TO ARBITRATION ARE NOT RESOLVED IN COURT BY A JUDGE OR JURY. TO THE EXTENT ALLOWED BY APPLICABLE LAW, THE PARTIES IRREVOCABLY AND VOLUNTARILY WAIVE ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY DISPUTE ARBITRATED PURSUANT TO THIS ARBITRATION PROGRAM.

**A. Governing Rules.** Any arbitration proceeding will (i) be governed by the Federal Arbitration Act (Title 9 of the United States Code), notwithstanding any conflicting choice of law provision in any of the documents between the parties; and (ii) be conducted by the American Arbitration Association ("AAA"), or such other administrator as the parties shall mutually agree upon, in accordance with the AAA's commercial dispute resolution procedures, unless the claim or counterclaim is at least $1,000,000.00 exclusive of claimed interest, arbitration fees and costs, in which case the arbitration shall be conducted in accordance with the AAA's optional procedures for large, complex commercial disputes (the commercial dispute resolution procedures or the optional procedures for large, complex commercial disputes are referred to herein, as applicable, as the "Rules"). If there is any inconsistency between the terms hereof and the Rules, the terms and procedures set forth herein shall control. Arbitration proceedings hereunder shall be conducted at a location mutually agreeable to the parties, or if they cannot agree, then at a location selected by the AAA in the state of the applicable substantive law primarily governing the Note. Any party who fails or refuses to submit to arbitration following a demand by any other party shall bear all costs and expenses incurred by such other party in compelling arbitration of any Dispute. The arbitrator shall award all costs and expenses of the arbitration proceeding.

**B. No Waiver of Provisional Remedies, Self-Help and Foreclosure.** The arbitration requirement does not limit the right of any party to (i) foreclose against real or personal property collateral; (ii) exercise self-help remedies relating to collateral or proceeds of collateral such as setoff or repossession; or (iii) obtain provisional or ancillary remedies such as replevin, injunctive relief, attachment or the appointment of a receiver, before during or after the pendency of any arbitration proceeding. This exclusion does not constitute a waiver of the right or obligation of any party to submit any Dispute to arbitration or reference hereunder, including those arising from the exercise of the actions detailed in sections (i), (ii) and (iii) of this paragraph.

**C. Arbitrator Qualifications and Powers.** Any arbitration proceeding in which the amount in controversy is $5,000,000.00 or less will be decided by a single arbitrator selected according to the Rules, and who shall not render an award of greater than $5,000,000.00. Any Dispute in which the amount in controversy exceeds $5,000,000.00 shall be decided by majority vote of a panel of three arbitrators; provided however, that all three arbitrators must actively participate in all hearings and deliberations. Every arbitrator shall be a neutral practicing attorney or a retired member of the state or federal judiciary, in either case with a minimum of ten years' experience in the substantive law applicable to the subject matter of the Dispute. The arbitrator will determine whether or not an issue is arbitratable and will give effect to the statutes of limitation in determining any claim. In any arbitration proceeding the arbitrator will decide (by documents only or with a hearing at the arbitrator's discretion) any pre-hearing motions which are similar to motions to dismiss for failure to state a claim or motions for summary adjudication. The arbitrator shall resolve all Disputes in accordance with the applicable substantive law and may grant any remedy or relief that a court of such state could order or grant within the scope hereof and such ancillary relief as is necessary to make effective any award. The arbitrator shall also have the power to award recovery of all costs and fees, to impose sanctions and to take such other action as the arbitrator deems necessary to the same extent a judge could pursuant to the Federal Rules of Civil Procedure, the applicable state rules of civil procedure, or other applicable law. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. The institution and maintenance of an action for judicial relief or pursuit of a provisional or ancillary remedy shall not constitute a waiver of the right of any party, including the plaintiff, to submit the controversy or claim to arbitration if any other party contests such action for judicial relief.

**D. Discovery.** In any arbitration proceeding discovery will be permitted in accordance with the Rules. All discovery shall be expressly limited to matters directly relevant to the Dispute being arbitrated and must be completed no later than 20 days before the hearing date. Any requests for an extension of the discovery periods, or any discovery disputes, will be subject to final determination by the arbitrator upon a showing that the request for discovery is essential for the party's presentation and that no alternative means for obtaining information is available.

**MORTGAGE**

Loan No: █████████                    **(Continued)**                                    **Page 10**

---

**E. Class Proceedings and Consolidations.** No party hereto shall be entitled to join or consolidate disputes by or against others in any arbitration, or to include in any arbitration any dispute as a representative or member of a class, or to act in any arbitration in the interest of the general public or in a private attorney general capacity.

**F. Small Claims Court.** Any party may require that a Dispute be resolved in Small Claims Court if the Dispute and related claims are fully within that court's jurisdiction.

**G. State Specific Provisions:**

If **Delaware, Pennsylvania or Virginia** law governs the Dispute, the following provision is applicable if there is a Confession of Judgment in any note, guaranty or other Documents subject to this Arbitration Program: Confession of Judgment. Notwithstanding anything herein to the contrary, the arbitration requirement does not limit or preclude the right of Lender to confess judgment pursuant to a warrant of attorney provision set forth in any note, guaranty or other Documents. No party shall have the right to demand binding arbitration of any claim, dispute or controversy seeking to (i) strike-off or open a judgment obtained by confession pursuant to a warrant of attorney contained in any note, guaranty or other Documents, or (ii) challenge the waiver of a right to prior notice and a hearing before judgment is entered, or after judgment is entered, but before execution upon the judgment. Any claims, disputes or controversies challenging the confession of judgment shall be commenced and prosecuted in accordance with the procedures set forth, and in the forum specified by the applicable state rules of civil procedure or other applicable law.

If **Maryland** law governs the Dispute, the following provision is applicable if there is a Confession of Judgment in any note, guaranty or other Documents subject to this Arbitration Program: Confession of Judgment. Notwithstanding anything herein to the contrary, the arbitration requirement does not limit or preclude the right of Lender to confess judgment, and no party shall have the right to demand binding arbitration of any claim, dispute or controversy seeking to open a judgment obtained by confession. Nothing herein, including the arbitration requirement, shall limit the right of any party to foreclose judicially or non-judicially against any real or personal property collateral, or exercise judicial or non-judicial power of sale rights. No provision regarding submission to a jurisdiction and/or venue in any court or the waiver of any right to trial by jury is intended or shall be construed to be in derogation of the provisions for arbitration of any dispute. Any claim or counterclaim or defense raised in connection with Lender's exercise of any rights set forth in any note, guaranty or other Documents subject to this Arbitration Program shall be subject to the arbitration requirement.

If **South Carolina** law governs the Dispute, the following provision is included: WAIVER OF JURY TRIAL. NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, WITHOUT INCLUDING IN ANY WAY TO LIMIT THE PARTIES' AGREEMENT TO ARBITRATE ANY DISPUTE AS SET FORTH IN THIS MORTGAGE, TO THE EXTENT ANY DISPUTE IS NOT SUBMITTED TO ARBITRATION OR IS DEEMED BY THE ARBITRATOR OR BY ANY COURT WITH JURISDICTION TO BE NOT ARBITRABLE OR NOT REQUIRED TO BE ARBITRATED, LENDER AND MORTGAGOR WAIVE TRIAL BY JURY IN RESPECT OF ANY SUCH DISPUTE AND ANY ACTION ON SUCH DISPUTE. THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY LENDER AND MORTGAGOR, AND THEY HEREBY REPRESENT THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY PERSON OR ENTITY TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE PARTIES ENTERING INTO THE LOAN DOCUMENTS. LENDER AND MORTGAGOR ARE EACH HEREBY AUTHORIZED TO FILE A COPY OF THIS SECTION IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER OF JURY TRIAL. MORTGAGOR FURTHER REPRESENTS AND WARRANTS THAT IT HAS BEEN REPRESENTED IN THE SIGNING OF THIS MORTGAGE AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY INDEPENDENT LEGAL COUNSEL SELECTED OF ITS OWN FREE WILL, AND THAT IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL.

**H. Real Property Collateral:**

If **California** law governs the Dispute, the following provisions are included: Real Property Collateral; Judicial Reference. Notwithstanding anything herein to the contrary, no Dispute shall be submitted to arbitration if the Dispute concerns indebtedness secured directly or indirectly, in whole or in part, by any real property unless (i) the holder of the mortgage, lien or security interest specifically elects in writing to proceed with the arbitration, or (ii) all parties to the arbitration waive any rights or benefits that might accrue to them by virtue of the single action rule statute of California, thereby agreeing that all indebtedness and obligations of the parties, and all mortgages, liens and security interests securing such indebtedness and obligations, shall remain fully valid and enforceable. If any such Dispute is not submitted to arbitration, the Dispute shall be referred to a referee in accordance with California Code of Civil Procedure Section 638 et seq., and this general reference agreement is intended to be specifically enforceable in accordance with said Section 638, as amended or replaced from time to time. A referee with the qualifications required herein for arbitrators shall be selected pursuant to the AAA's selection procedures. Judgment upon the decision rendered by a referee shall be entered in the court in which such proceeding was commenced in accordance with California Code of Civil Procedure Sections 644 and 645, as amended or replaced from time to time.

If **Connecticut** law governs the Dispute, the following provision is included: Real Property Collateral. Notwithstanding anything herein to the contrary, no dispute shall be submitted to arbitration if the dispute concerns indebtedness secured directly or indirectly, in whole or in part, by any real property unless (i) the holder of the mortgage, lien or security interest specifically elects in writing to proceed with the arbitration, or (ii) all parties to the arbitration waive any rights or benefits that might accrue to them by virtue of Sections 49-1 and 49-14 et seq. of the Connecticut General Statutes, as amended or replaced from time to time, thereby agreeing that all indebtedness and obligations of the parties, and all mortgages, liens and security interests securing such indebtedness and obligations, shall remain fully valid and enforceable.

If **Idaho, Kansas, Montana, Nevada, South Dakota or Virginia** law governs the Dispute, the following provision is included: Real Property Collateral. Notwithstanding anything herein to the contrary, no Dispute shall be submitted to arbitration if the Dispute concerns indebtedness secured directly or indirectly, in whole or in part, by any real property unless (i) the holder of the mortgage, lien or security interest specifically elects in writing to proceed with the arbitration, or (ii) all parties to the arbitration waive any rights or benefits that might accrue to them by virtue of the single action rule statute of Idaho, Kansas, Montana, Nevada, South Dakota or Virginia, thereby

**MORTGAGE
(Continued)**

**Loan No:** 

**Page 11**

agreeing that all indebtedness and obligations of the parties, and all mortgages, liens and security interests securing such indebtedness and obligations, shall remain fully valid and enforceable.

If **Utah law governs the Dispute,** the following provision is included: Real Property Collateral; Judicial Reference. Notwithstanding anything herein to the contrary, no Dispute shall be submitted to arbitration if the Dispute concerns indebtedness secured directly or indirectly, in whole or in part, by any real property unless (i) the holder of the mortgage, lien or security interest specifically elects in writing to proceed with the arbitration, or (ii) all parties to the arbitration waive any rights or benefits that might accrue to them by virtue of the single action rule statute of Utah, thereby agreeing that all indebtedness and obligations of the parties, and all mortgages, liens and security interests securing such indebtedness and obligations, shall remain fully valid and enforceable. If any such Dispute is not submitted to arbitration, the Dispute shall be referred to a master in accordance with Utah Rule of Civil Procedure 53, as amended or replaced from time to time, and this general reference agreement is intended to be specifically enforceable. A master with the qualifications required herein for arbitrators shall be selected pursuant to the AAA's selection procedures. Judgment upon the decision rendered by a master shall be entered in the court in which such proceeding was commenced in accordance with Utah Rule of Civil Procedure 53(e), as amended or replaced from time to time.

**I. Miscellaneous.** To the maximum extent practicable, the AAA, the arbitrators and the parties shall take all action required to conclude any arbitration proceeding within 180 days of the filing of the Dispute with the AAA. No arbitrator or other party to an arbitration proceeding may disclose the existence, content or results thereof, except for disclosures of information by a party required in the ordinary course of its business or by applicable law or regulation. If more than one agreement for arbitration by or between the parties potentially applies to a Dispute, the arbitration provision most directly related to the documents between the parties or the subject matter of the Dispute shall control. This arbitration provision shall survive the repayment of the Note and the termination, amendment or expiration of any of the Documents or any relationship between the parties.

**SBA NATIONWIDE PROGRAM.** The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations:

a) When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.

b) Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.

Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

**SBA ARBITRATION.** The parties specifically agree that the provisions of this Arbitration Program are not applicable to any dispute between any party and the U.S. Small Business Administration (the "SBA"), including but not limited to, any dispute with the SBA after purchase of the loan by SBA.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.** With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Property, this Mortgage will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the State of Florida. In all other respects, this Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Carolina without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Mortgage is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Mortgage has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of North Carolina.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Grantor signing below is responsible for all obligations in this Mortgage.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender

## MORTGAGE

in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any person or circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other person or circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means Seven Stars on the Hudson Corp and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Default.** The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Mortgage.

**Grantor.** The word "Grantor" means Jens A. Berding and Eddy E. Manzo-Berding.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage.

**Lender.** The word "Lender" means Wells Fargo Bank, National Association, its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated August 29, 2016, **in the original principal amount of $1,406,900.00** from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. **NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.**

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and



## MORTGAGE
### (Continued)

Loan No:                                                              Page 13

additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**WAIVER OF FUTURE ADVANCES UNDER PRIOR MORTGAGE.** Grantor hereby agrees that the principal indebtedness secured by any mortgages or security agreements which are senior to the lien of this Mortgage shall not exceed the amount which upon the date of the execution of this Mortgage has actually been advanced and is secured by each such prior mortgage and security agreement. As principal indebtedness of such prior mortgages or security agreements is reduced, the maximum amount that may be secured thereby shall also be reduced to the then outstanding principal balance(s). Grantor hereby waives the right to receive any additional or future advances under any such prior mortgages or security agreements. This paragraph shall constitute the notice required by Florida Statutes Section 697.04(b).

**EACH GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND EACH GRANTOR AGREES TO ITS TERMS.**

GRANTOR:

X _____
  Jens A. Berding

X _____
  Eddy E. Manzo-Berding

WITNESSES:

X _____
  ESMERALDA ROMERO

X _____

**MORTGAGE**
**(Continued)**

Loan No:                                                                    Page 14

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF FLORIDA                                        )
                                                       ) SS
COUNTY OF Palm Beach                                    )

The foregoing instrument was acknowledged before me this 29 Tb day of August, 2016
by Jens A. Berding, who is personally known to me or who has produced FL DL as identification.

_Esmeralda Romero_
(Signature of Person Taking Acknowledgment)

ESMERALDA ROMERO
(Name of Acknowledger Typed, Printed or Stamped)

ESMERALDA ROMERO
MY COMMISSION #FF016120
EXPIRES May 7, 2017
(407) 398-0153    FloridaNotaryService.com

_____
(Title or Rank)

_____
(Serial Number, if any)

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF FLORIDA                                        )
                                                       ) SS
COUNTY OF Palm Beach                                    )

The foregoing instrument was acknowledged before me this 29 Tb day of August, 2016
by Eddy E. Manzo-Berding, who is personally known to me or who has produced FL DL as identification.

_Esmeralda R_
(Signature of Person Taking Acknowledgment)

ESMERALDA ROMERO
(Name of Acknowledger Typed, Printed or Stamped)



ESMERALDA ROMERO
MY COMMISSION #FF016120
EXPIRES May 7, 2017
(407) 398-0153    FloridaNotaryService.com

_____
(Title or Rank)

_____
(Serial Number, if any)

LaserPro, Ver. 16.2.0.015   Copr. D+H USA Corporation 1997, 2016.   All Rights Reserved.   - FL/NC   C:\LPMD\s\CFI\LPL\G03.FC
TR-229848  PR-800

## EXHIBIT "A"

Lot 7, less the West 5 feet, Block 39, Imperial Point 2nd Section, according to the plat thereof as recorded in Plat Book 54, Page 19, Public Records of Broward County, Florida.